Seymour LANDAU and all others similar-
ly situated, Plaintiff,

v.

The CHASE MANHATTAN BANK,
N.A., Defendant.

No. 72 Civ. 4514.

United States District Court,
S. D. New York.

Sept. 28, 1973.

**994**

Sheldon V. Burman, New York City, for plaintiff.

Milbank, Tweed, Hadley & McCloy, New York City, by Isaac Shapiro, Norman R. Nelson, New York City, of counsel, for defendant.

## OPINION and ORDER

KEVIN THOMAS DUFFY, District Judge.

This is a motion for a class action determination and cross-motions for summary judgment. Plaintiff sues on behalf of himself and all other holders of Chase Manhattan cash reserve checking accounts. Holders of such accounts may draw up to $500 beyond their balance and repay it with interest in twenty monthly installments, pursuant to a cash reserve credit agreement entered into between the holder of the account and the bank. Plaintiff alleges that the bank's method of computing interest on loans made pursuant to cash reserve credit agreements amounts to charging interest on interest and interest on check maintenance and service charges in violation of New York Banking Law § 108(5) McKinney's Consol.Laws, c. 2 and the National Bank Act, 12 U.S.C. §§ 85, 86. Defendant maintains that its method of computing interest is in compliance with these laws.

■ Jurisdiction is properly invoked pursuant to 28 U.S.C. § 1337 and 28 U.S.C. § 1355. Section 1337 confers on the district courts "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . ." The National Bank Act clearly regulates commerce. Section 1355 confers exclusive jurisdiction "of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture . . . incurred under any Act of Congress." The plaintiff is suing for recovery of the penalty provided by Section 86 of the National Bank Act. In addition the state claims stem from a "common nucleus of operative fact", United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and thus meet the test for pendent jurisdiction.

### I. Class Action

Before reaching the merits, it is necessary to determine whether this case should be maintained as a class action. Rule 23(a) Fed.R.Civ.P. sets out the four threshold requirements for a class action, at least three of which the plaintiff appears to have met. According to the defendant's records, the number of customers who may have paid what is alleged to be interest on interest was 1500 at the end of October, 1971, clearly a sufficiently large number to make joinder impractical. There are common questions of law and fact and the plaintiff's claims are typical of those of the class. The only dispute is whether the

plaintiff can adequately protect the interests of the class. According to the defendant's uncontradicted affidavit, the plaintiff lacks standing to raise the claim that interest is charged on interest. Defendant argues that since this is the "predominating claim" in the complaint, the plaintiff is not an adequate representative of the class.

To evaluate this contention one must understand how the defendant calculates and charges interest for reserve checking accounts. When the customer uses part of the line credit provided, the bank lends the customer the amount of the overdraft, up to an agreed maximum of five hundred dollars. Interest begins to run on this amount immediately at the rate of .0329 per cent a day, the equivalent of 12% per year. The year is divided into twelve billing cycles, and at the end of each cycle the customer receives a statement of account showing the principal amount owed, if any, with the interest accumulated during that cycle separately stated. Under the credit agreement the first installment of repayment is due within thirty days of the first monthly statement of account. During that thirty day period the interest accumulated during the previous cycle is not added onto the principal amount owing, but is held aside in the computer information system and listed separately on the second statement of account. By this time such interest should have been repaid, since the first installment is due and would have been applied first to interest and then to principal. If no installment has been paid, however, the interest from the first billing cycle is added to the principal amount and begins to collect interest.

According to the defendant, the plaintiff has always promptly repaid his overdrafts and avoided the situation where interest could be charged on interest. Therefore, the defendant argues, he "does not possess the claim which he seeks to assert on behalf of the purported class."

 This argument puts in question not only plaintiff's adequacy as a class representative, but also his standing to raise the issue of whether the defendant charges interest on interest. The Supreme Court has recently established that the prerequisites of standing to sue under a federal statute are (1) injury in fact and (2) an interest arguably within the zone of interests intended to be protected by the statute. Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Plaintiff's case raises no problem as to the second prerequisite. It is clear that the National Bank Act was intended to protect borrowers from paying excess interest, as evidenced by its provision for double recovery to those who have paid such interest. 12 U.S.C. § 86. Rather the crux of the problem is whether the plaintiff has shown the requisite injury in fact.

In approaching this question it is important to note that the plaintiff has demanded three forms of relief, i. e. damages, an injunction and a declaratory judgment. The type of injury, whether past or future, which must be alleged to meet the test for standing naturally varies depending upon the type of relief sought. Here the complaint speaks in terms of past injury, and our analysis must therefore begin with the question whether the plaintiff has sufficiently shown past injury in fact to have standing to sue for damages.

The relevant allegations of the complaint state that:

"7. In connection with plaintiff's account, plaintiff received loans and/or advances from CHASE, made various payments in reduction thereof and had interest charges imposed against his account in the alleged unlawful manner, more particularly described below.

8. CHASE furnished plaintiff with monthly statements setting forth the details of the previous month's loans, payments and interest charges.

9. These monthly statements reveal that CHASE exacts interest charges

not only on the "unpaid principal amount", required by statute, but rather on the unpaid principal plus accrued interest, check maintenance charges and check service charges."

■ Under the liberalized rules of pleading, these allegations would ordinarily be sufficient to meet the requirement of injury in fact. Standing is a threshold question which is normally resolved on the basis of the pleadings. See Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 428 F. 2d 1093, 1097 (D.C.Cir.1970); Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970). However, when the allegations of the complaint upon which standing is based are flatly contradicted by a sworn affidavit, the district court must inquire further to ascertain whether, *in fact*, the plaintiff has standing. For if the plaintiff lacks standing, the court is without jurisdiction to proceed.

In Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) the Supreme Court held that the plaintiff lacked standing because the complaint failed to allege injury to the Club or its members resulting from the development of Mineral King. Yet the Court implied that the deficiency in the complaint could have been rectified by an affidavit setting forth the injury to the plaintiff and/or its members. Specifically the Court stated that:

"Nowhere in the pleadings or affidavits did the Club state that its members use Mineral King for any purpose, much less that they use it in any way that would be significantly affected by the proposed actions of the respondents." 405 U.S. at 735, 92 S.Ct. at 1366.

Although the *Sierra Club* case does not provide much guidance to a court faced with a complaint contradicted by an opposing affidavit, it demonstrates the Court's awareness that an inquiry into the question of injury in fact need not end with the pleadings. See also Sissons v. Office of Selective Service of United States, 454 F.2d 279 (9th Cir. 1972).

■ On the record before this court, it does not appear that the plaintiff has in fact been injured by the defendant's alleged practice of charging interest on interest. In response to defendant's sworn statement that plaintiff has never been asked to pay such charges, plaintiff has submitted only a memorandum of law arguing that he need not prove such injury for the purposes of this motion. He cites cases to show that plaintiffs have been held to be adequate representatives of a class even where the facts of their case varied somewhat from those of other members. In none of those cases, however, was the court confronted with a sworn affidavit challenging the plaintiff's right to sue. In Mersay v. First Republic Corp. of America, 43 F. R.D. 465 (S.D.N.Y.1968), for example, the defendant merely argued that the plaintiff would not be able to prove reliance or damages. Judge Metzner found this to be a possible variation in fact pattern but not a bar to class representation. In a suit for recovery of interest charged on interest, the failure to have sustained any such charge is not a mere variation in fact pattern, but strikes at the very essence of the claim. The plaintiff's failure to show injury in fact deprives him of standing to sue for the recovery of interest charged on interest.

■ As the plaintiff points out, the question of future injury is another matter. The fact that the plaintiff lacks standing to sue for damages does not necessarily deprive him of standing to sue for an injunction. However, plaintiff has not alleged any future injury, much less submitted an affidavit. The complaint speaks solely in terms of past injury, and the prayer for an injunction is promised upon a finding of past injury which must be curtailed. A plaintiff who lacks standing to sue for past injury must make separate allegations of threatened harm in order to have standing to sue for future injury. Since the plaintiff has failed to do this, he does not, on this record, have standing to sue for an injunction.

Plaintiff relies on Kovarsky v. Brooklyn Union Gas Co., 279 N.Y. 304, 314–315, 18 N.E.2d 287 (1938) to support his argument concerning future injury, but that case is clearly distinguishable. There the plaintiff had been billed the service charge which he sought to challenge, but had refused to pay it and the defendant was threatening to turn off his gas. Such a threat of injury is exactly what is lacking in the case at bar. The defendant cannot charge interest on interest unless the plaintiff fails to make the required payment on time, and there is nothing in the papers submitted to suggest that the plaintiff will depart from his past practice of prompt payment. Mere speculative injury does not meet the test for standing. Merced Rosa v. Herrero, 423 F.2d 591 (1st Cir. 1970).

 Standing to sue for a declaratory judgment requires the presence of a case or controversy no less than standing to sue for other forms of relief. Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Because of his failure to show past injury and his failure to allege future injury, the plaintiff's claim lacks the adversary quality necessary to satisfy the requirements of standing mandated by Article III of the Constitution.

Since the plaintiff lacks standing to raise the claim of illegal charges of interest on interest, this court lacks jurisdiction over the claim and it must therefore be dismissed.

There remain, of course, the questions of whether the defendant imposes illegal interest on service and maintenance charges and whether the effective rate of interest is in excess of 12%. No standing problem has been raised with regard to these questions, and the plaintiff appears to be an adequate representative of the class. These two claims may therefore be maintained as a class action on behalf of all holders of Chase Manhattan cash reserve checking accounts.

 More delicate is the question whether the action falls into category (b)(1), (b)(2) or (b)(3) of Rule 23 Fed.R.Civ.P. The differences between the categories are somewhat subtle, but it seems clear that subsection (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Notes of Advisory Committee on Rules, 39 F.R.D. 69, 102 (1966). Here the complaint speaks solely in terms of past injury and the court's jurisdiction is predicated partly on a statute relating to relief, 12 U.S.C. § 86, which mentions only damages. Under these circumstances, while the court is not without equitable power to grant an injunction, money damages would be the predominant form of relief, and it would therefore be inappropriate to maintain the action under subsection (b)(2).

 The plaintiff argues that the action should be maintained under subsection (b)(1)(A) which applies in cases where:

> "The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Rule 23(b)(1)(A) Fed.R.Civ.P.

The Notes of the Advisory Committee, *supra*, explain by way of example that the meaning of "inconsistent or varying adjudications" does not include the simple case where two individuals sue the same defendant for the same relief and one wins while the other loses. The meaning intended is rather that the same defendant might be sued by different plaintiffs asking for different and incompatible affirmative relief. Goldman v. First National Bank of Chicago, 56 F.R.D. 587 (N.D.Ill.1972); Berman v. Narragansett Racing Association, 48 F.R.D. 333 (D.R.I.1969). In this case such a dilemma could only arise if another member of the class sued the de-

fendant demanding that higher interest be charged. Of this there is no realistic likelihood.

■ Similarly, the meaning of subsection (b)(1)(B) is not as broad as it seems. This subsection applies where there is a risk of:

"adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;" Rule 23(b)(1)(B) Fed.R.Civ.P.

The Advisory Committee's Notes demonstrate that more than *stare decisis* is required to create the risk referred to in subsection (b)(1)(B). The examples used include situations where claims are made against a limited fund or where the rights of novice exhibitors to compete within a limited area are adjudicated. A suit for damages for excessive interest such as the one at bar does not properly fall within this category. See Goldman v. First National Bank of Chicago, *supra*; Travers and Landers, The Consumer Class Action, 18 Kan.L.Rev. 811, 823–24 (1970).

■ This action will therefore be maintained under subsection (b)(3). The common questions clearly predominate over individual ones. Since every holder of a cash reserve checking account is subject to service and maintenance charges, the only individual questions will be how much interest has been imposed upon the service and maintenance charges of each customer. This could be calculated from the defendant's records and would not even require a trial. Notice to the class members as required by Rule 23(c)(2) will be directed by the Court based upon an order to be submitted by the parties.

II. Summary Judgment

Both sides have moved for summary judgment on the question of the legality of imposing interest on service and maintenance charges. The National Bank Act, 12 U.S.C. § 85 permits a national bank to charge interest up to the maximum rate permitted by the laws of the state where it is located. Here the applicable law is Section 108(5) of the New York Banking Law which provides that:

"5. (a) A bank or trust company which operates a personal loan department pursuant to paragraph (a) of subdivision four hereof may establish credits under written agreements with borrowers, pursuant to which one or more loans or advances to or for the account of a borrower may be made from time to time, by means of honoring one or more checks or other written orders or requests of the borrower and may charge interest on such loans and advances at the rate permitted by paragraph (b) of this subdivision, provided such loans and advances comply with the provisions of this subdivision."

The plaintiff argues that subsection (a) requires separate authorization for loans, other than the initial agreement entered into by the bank and the customer. Thus interest may be charged on amounts corresponding to the checks written by the plaintiff on his account but may not be charged on service and maintenance charges which are simply deducted from the account by the defendant. The defendant argues that such deductions are loans, no different from the deductions made when the plaintiff writes checks, and that since the bank is lending the plaintiff the amount of the service and maintenance charges it may exact interest on that amount. The written authorization, according to the defendant, comes from the agreement itself which provides that:

"2. The Bank will from time to time advance the necessary funds for the Account, up to a total at any time outstanding equal to the Credit, to pay checks and other amounts for which there is an insufficient credit balance in the Account at the time but which are otherwise chargeable to the Account."

The defendant contends that service and maintenance charges may reasonably be characterized as "other amounts" which the plaintiff has thus agreed to have included in his credit. This argument assumes, however, that such service and maintenance charges are "otherwise chargeable to the Account," an assumption which is rebutted by a close reading of Section 108(5)(e) of the statute.

Section 108(5)(e) provides in relevant part as follows:

"(e) The maximum rate of interest authorized by this subdivision shall be inclusive of all charges to the borrower incident to investigating and making any such loan or advance. *No fee, commission, expense, or other charge to the borrower* whatsoever in addition thereto shall be taken, received, reserved, or contracted for, *except, if it is so provided in the agreement, (i) a service charge* not in excess of twenty-five cents upon each such check or other written order or request; (ii) in case of default, in addition to interest, a fine in an amount not to exceed four cents per dollar of principal of any installment which has become due and remained unpaid for a period in excess of ten days, . . ." (Emphasis added.)

It is in the light of this section that the Court must approach the question whether service and maintenance charges constitute "amounts otherwise chargeable to the Account."

Section 108(5)(e) forbids "charges to the borrower (other than interest charges) incident to . . . making any such loan or advance." The first question therefore is whether service charges fall into this category. According to the affidavit of the defendant's vice president, the service charges imposed on special, as opposed to regular, checking accounts consist of a monthly charge of seventy-five cents plus ten cents per check. The plaintiff has paid these charges since 1957 when he opened his special checking account, although he did not enter into the cash reserve credit agreement until 1970. Between 1957 and 1970 then, the charges were not "incidental to . . . making any such loan or advance", but since 1970 they have necessarily been incidental thereto, because they have been imposed on all checks used to draw such loans and advances. This court therefore concludes that the service charges on a special checking account, subject to a cash reserve credit agreement, are covered by Section 108(5)(e).

Section 108(5)(e) allows such charges to be imposed only "if it is so provided in the agreement". The agreement between plaintiff and defendant contains no reference to service charges of any kind, although it does contain an express provision for fines in case of default pursuant to Section 108(5)(e)(ii) quoted above. It could be argued that service charges are covered by the final clause of the agreement, which states in relevant part:

"This agreement is in addition to any other agreement, terms or conditions relating to the Account, all of which continue effective."

However, such incorporation by reference does not meet the express statutory requirement that the bank's intention to impose service charges be "provided in the agreement." Under Section 108(5)(e), therefore, the service charges do not constitute "amounts otherwise chargeable to the Account."

By the terms of the agreement the bank may charge interest only on the amount of "Credit in use at the close of each day." If service charges are not "amounts otherwise chargeable to the Account" the bank is not authorized to include them as part of the "Credit in use" and consequently may not charge interest on them. On this issue, therefore, summary judgment must be entered for the plaintiff.

Settle order on notice.