**In re FOOD FAIR, INC.,
Debtor-in-Possession.**

Bankruptcy No. 78 B 1764.

United States Bankruptcy Court,
S. D. New York.

April 9, 1981.

Levin & Weintraub, New York City, for debtor.

Stein, Rosen & Ohrenstein, New York City, Sp. Counsel to debtor.

Freedman & Lorry, Philadelphia, Pa., for claimant.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

Claimant, the Amalgamated Meat Cutters and Butcher Workmen of North America Retail Pension Fund, has initiated this action against Food Fair, Inc., for breach of contract. Claimant asserts that in connection with its participation in a multiemployer pension plan, Food Fair promised to pay all the costs of the Pension Fund attributable to its former employees and now owes the Fund an estimated $18,600,000. In moving for summary judgment to expunge

the claim, Food Fair argues that under the clear terms of the documents establishing and maintaining this multiemployer pension plan Food Fair's sole obligation is to pay into the Fund a specified contribution measured in terms of a dollar amount for each hour of straight time worked by an active employee. Food Fair also submits that claimant has failed to demonstrate any injury sufficient to create a justiciable controversy as required by the Constitution.

■ This case is the third in a series of actions against Food Fair regarding its participation in several multiemployer pension plans. As in *In the Matter of Food Fair, Inc.*, Claim no. 12938, (S.D.N.Y. Sept. 16, 1980) and Claim no. 12938 (March 19, 1981) this court holds that Food Fair's sole funding obligation to this pension plan is limited to the payment of a specified contribution per hour for each currently active employee as set out in the collective bargaining agreements.

The Pension Plan at issue was established in 1957 pursuant to a collective bargaining agreement between Food Fair, other participating supermarket employers, and the Amalgamated Meat Cutters and Butcher Workmen of North America (the Union). This Plan has been carried forward in each succeeding collective bargaining agreement to the present. Under the provisions of the original and subsequent collective bargaining agreements, Food Fair and other participating employers have been required to make contributions to the Plan measured by the service hours of active employees. Accordingly, total contributions have varied in correspondence with fluctuations in the size of the actual workforce.

This claim arises out of the closing by Food Fair in early 1979 of its Philadelphia area stores in connection with the Chapter XI reorganization. Numerous employees covered by the Pension Plan were terminated and Food Fair's contributions were correspondingly reduced. Although the burden of supporting the Plan has largely shifted to the other participating employers, Food Fair has remained party to the Plan and has continued to make contributions measured by the service hours of active employees at its continuing facilities.

The Pension Fund brought this suit alleging that Food Fair's curtailment of contributions and refusal to pay an estimated $18,600,000 representing the benefits attributable to Food Fair's employees, has imposed an unfunded liability on the Plan which threatens to deprive Food Fair employees of their full vested retirement benefits. The Union also asserts that since portions of a recent increase in the contribution rate are attributable to the decrease in Food Fair's financial support, these funds will be permanently unavailable to employees as increases in benefits.

## I

Claimant anchors Food Fair's liability for these prospective losses on a promise allegedly implicit in Food Fair's actions, representations and specific written undertakings, to contribute to the Fund an amount sufficient to pay all benefits to be distributed by the Fund to Food Fair's employees. In support of its claim, the Fund insists that the entirety of the relationship between Food Fair, its employees, the Union and the Plan cannot be determined exclusively by reference to written documents. *See* Claimants' Statement Pursuant to Local Rule 9(g) at paragraph 10. To substantiate Food Fair's implicit promise, Claimant wishes to present testimony at trial showing that in the course of negotiations, Food Fair, its fellow employers and the Union were concerned primarily with the amounts of ultimate pension benefits payable to employees rather than on the amount of each employer's contributions. However, in answer to Food Fair's interrogatories as to whether there were memoranda, documents, or any other material or conversations relating to claimants' allegations of liability, claimants stated:

> Claimant has been unable to ascertain whether or not there are any memoranda, correspondence, documents, or any other material maintained by its employees, agents or attorneys which relate in any way to claimants allegation of Debtor's liability.

48

Interrogatory No. 3. Claimant also stated that it was "unaware of any conversations as requested in Interrogatory No. 4."

■ This Court is disinclined to allow the Pension Fund to avoid summary judgment on the basis of claims of evidence it has not demonstrated it possesses. As the District Court noted in *Berry Bros. Buick, Inc., v. General Motors Corp.*, 257 F.Supp. 542 (E.D. Pa.1966) *aff'd.* 377 F.2d 552 (3rd Cir. 1967) in opposing a motion for summary judgment a party,

> cannot withhold evidence until the date of trial but must show by some admissible evidence that there is a genuine issue as to a material fact. Plaintiff cannot rest on ignorance of the facts but must obtain from discovery or otherwise information which should seek to amplify or test by further discovery.

*Id.* at 545. Plaintiff has not met that burden.

■ Moreover, under general contract law the evidence claimant would present in a hearing is inadmissible.

> Under the Parol Evidence Rule, when parties to a contract have reduced their agreement to a written form, and this writing appears on its face to be the entire agreement of the parties, evidence of prior or contemporaneous negotiations or agreements which either vary or contradict that writing, is inadmissible.

*United States Gypsum Co. v. Schiavo Bros.*, 450 F.Supp. 1291, 1302 (E.D.Pa.1978). The three documents which embody the terms of the Pension Plan agreement between the employers and the Union, evidence such an intent to constitute the entire agreement of the parties concerning the operation and funding of the Plan. Article XI, subsection (e) of the 1957 Collective Bargaining Agreements, which establishes the funding obligation of the employers, sets forth a single employer contribution formula based on the number of hours worked by each regular full-time employee. Subsequent collective bargaining agreements continue this pattern of describing the employer's obligation in terms of these periodic hourly based contributions. Nowhere is there language suggesting Food Fair is liable to make contributions for employees no longer active. As claimant points out, each collective bargaining agreement acknowledges that the "Employer agrees to pay such contributions as are from time to time necessary to maintain the soundness of the Plan as determined by an actuarial study". But clearly the use of the term "contribution" in this provision can only refer to the contributions mentioned in the previous paragraph and measured by the number of service hours worked by the employees.

The Trust Agreement, which establishes the fund to receive the contributions from the employers and from which benefits to eligible employees are paid, only affirms the circumscribed scope of Food Fair's liability by referring back to the collective bargaining agreement's definition of contributions.

> The contributions or payments of the Employers shall be made in the amounts set forth in the collective bargaining agreement or agreements and amendment or amendments thereto, which may be presently in existence, or which may be hereafter made by and between the Union and the Employers.

Agreement and Declaration of Trust, Article VI, section 1 (July 1, 1957). Claimant points to one provision of the Trust Agreement which undertakes that

> [a]n Employer shall not have the duty or obligation to collect, receive or pay over any of the contributions or payments required to be made and to be paid by another Employer, Nor shall and Employer or the Union be deemed guarantors or sureties in respect to any contributions or payments from another Employer.

Article VI, section 3. Claimant interprets this provision as limiting the payment by an employer to the amounts required to fund its own employees' expected benefits. Such an interpretation is incorrect because the provision states only that an employer shall not pay another employer's *contributions* as defined in the collective bargaining agreement, not that the money collected cannot be used to pay the benefits for another's

employees. The Trust Agreement thus creates no independent obligation on the part of employers, but refers back to the original contribution formula set out in the collective bargaining agreements.

The "Pension Plan", a document which sets benefits for the employee-participants, makes no mention of the amount or extent of employer liability other than to refer to that expressed in the collective bargaining agreement.

Thus, the language of the relevant documents presents no basis for claimant's contention that Food Fair is contractually obligated to provide its employees with specific benefits. Nor does it display sufficient ambiguity to urge consideration of a pattern of conduct in contract negotiations. As was stated in *Central Contracting Co. v. Maryland Casualty Co.*, 242 F.Supp. 858 (W.D.Pa. 1965), aff'd 367 F.2d 341 (3rd Cir. 1966),

> where the written contract covers or purports to cover the entire agreement of the parties and there is no argument and proof that anything was omitted therefrom by fraud, accident or mistake, all prior and contemporaneous negotiations, representations and verbal agreements are superceded by the written agreement and parol evidence is inadmissible to alter or contradict . . . the written contract.

242 F.2d at 863.

■ In the case of collective bargaining agreements as well, parol evidence is inadmissible for the purpose of interpreting terms that are facially clear and unambiguous. *Manning v. Wiscombe*, 498 F.2d 1311 (10th Cir. 1974). In light of the foregoing this court declines to accept evidence extrinsic to the Pension Plan documents for the purpose of varying their clear and express terms.

## II

As was discussed at length in *In the Matter of Food Fair, Inc.*, Claim No. 12938 (S.D.N.Y. March 19, 1981), E.R.I.S.A. at this time imposes no obligation on Food Fair to pay into a multiemployer pension fund, an amount equal to the total benefits which will accrue to its employees. The recently enacted Multiemployer Pension Plan Amendments to E.R.I.S.A., which do impose liability for "partial withdrawals" of the kind in the case at bar, only affect contribution curtailments occurring on or after April 29, 1980. See Multiemployer Pension Plan Amendments to E.R.I.S.A., section 108 (concerning transition rules and effective dates). Finally Claimant attempts to premise Food Fair's liability under the common law on a promise to pay benefits allegedly implicit in the documents which set forth the levels of pension benefits, in the understandings of the parties concerning the nature of the bargaining process and the inherent requirements of the actuarial process for generating the necessary funds. In effect claimant asserts that Food Fair agreed to provide the specific pension benefits through the medium of the agreed upon contribution rate since the contribution levels are derived from actuarial calculations based on those benefit levels.

■ This theory lies directly in conflict with the language of the relevant documents, the risk-sharing precepts of multiemployer pension plans and the case law interpreting those plans. The pension plan documents clearly confine Food Fair's liability to its periodic contributions. And consistent with usual multiemployer pension arrangements, the employers have pooled their contributions into a jointly managed trust, the assets of which are available to pay the benefits of any covered employee, irrespective of employer. In *Connolly v. Pension Benefit Guaranty Corp.*, 581 F.2d 729, 731 (9th Cir. 1978), *cert. denied* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979), the Ninth Circuit, facing such a multiemployer pension plan, held that "the employers sole obligation to the pension fund is to pay such contributions as required by the collective bargaining agreements", even though contributions sufficient to pay its employees' benefits had not been made on their behalf. The documents and the case law thus confirm that it is the Plan as a whole which has the obligation to pay vested pension benefits, not particular employers such as Food Fair.

This system presents no danger of underfunding because under the collective bargaining agreement the Trustees of the Plan may raise the level of per active employee contributions to prevent any shortfall. Such an increase in contributions, made more than a year after Food Fair closed its Philadelphia stores, in fact granted benefit increases to covered employees. Claimant thus has not proved any deprivation as a result of Food Fair's action.

### III

This Plan gives every indication of being actuarially sound. Not only are current contributions sufficient to provide adequate funding for future pension liabilities, but, as just mentioned, they have also supported a recent increase in pension benefits. The Pension Fund's claim that Food Fair's employees may someday not receive their vested benefits as a result of Food Fair's curtailment of contributions is thus purely speculative and remote. Such claims have been rejected by courts as lacking sufficient demonstration of injury in fact to meet the "case or controversy" requirement for subject matter jurisdiction.

The Second Circuit has stated that:

What must be shown is a specific and perceptible harm—a 'concrete injury' actually suffered by the particular plaintiff, or else clearly imminent, which is capable of resolution and redress in the federal courts. Abstract or hypothetical injury is not enough.

*Evans v. Lynn*, 537 F.2d 571, 590–591 (2d Cir. 1975), *cert. denied*, 429 U.S. 1066, 97 S.Ct. 797, 50 L.Ed.2d 784 (1977).

In a case in this district, *Landau v. Chase Manhattan Bank*, 367 F.Supp. 992 (S.D.N.Y. 1973), involving a comparably speculative injury, a class of holders of cash reserve checking accounts, alleged that defendants method of computing interest on loans violated state law through charging interest on interest, the court noted that the record failed to reveal plaintiffs in fact had been charged interest. In dismissing the suit the court stated,

There is nothing in the papers submitted to suggest plaintiff will depart from his past practice of prompt payment. Mere speculative injury does not meet the test for standing.

*Id.* at 997. Similarly, in this case there is nothing in the record to indicate claimant has failed to receive contributions sufficient to pay benefits nor is there any indication the presently contributing employers will not continue to adequately provide funding in the future.

The D.C. Circuit Court in *American Society by Travel Agents v. Blumenthal*, 566 F.2d 145 (D.C.Cir.1977), *cert. denied* 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1978) has also treated this issue of abstract harm. In dismissing an action by a society of travel agencies charging that the granting of favorable tax treatment to certain charitable organizations allowed them to unfairly syphon off business from commercial agencies, the court held,

"Appellants have not indicated with sufficient specificity either the manner in which their alleged injury occurred or the nature of that injury, . . . Instead, appellants complain in more abstract terms, alleging injury arising from appellees creation of an unfair competitive atmosphere . . . We regard this sort of injury claim as too speculative to support standing under the circumstances."

*Id.* at 148–9. In the case at bar claimant also does not show with any specificity how beneficiaries have been or might be deprived of sufficient funds to pay benefits to which employees are entitled. This Court must thus refuse to sustain the Fund's claim of injury when it is premised on speculative eventualities.

In conclusion, this Court finds claimants have presented no triable issue of fact sufficient to block a motion for summary judgment. This Court declines the Union's request to present bargaining history in an attempt to vary a facially unambiguous and complete agreement, and refuses to put its imprimatur on a form of employer liability unsupported in case law. Food Fair's mo-

tion for summary judgment expunging the claim is hereby granted.

It is so ordered.