Miriam **ABRAMOVITZ, et al., Plaintiffs,**

v.

James **AHERN, et al., Defendants.**

Civ. No. N–77–207.

United States District Court,
D. Connecticut.

Dec. 14, 1982.

John R. Williams, Williams, Wynn & Wise, New Haven, Conn., Melvin L. Wulf, Clark, Wulf & Levine, New York City, Michael P. Koskoff, Bridgeport, Conn., Henry B. Hurvitz, Hartford, Conn., Leon Friedman, New York City, for plaintiffs.

Bruce L. Levin, Arnold J. Bai, Paul E. Pollock, Mary E. Sommer, Bai, Pollock & Dunnigan, Bridgeport, Conn., for Di Lieto.

Vincent T. McManus, Jr., Wallingford, Conn., for Francis V. McManus.

Louis Smith Votto, Dennis J. Donahue, Jr., Donahue & Votto, West Haven, Conn., for Arthur Quick.

J. Daniel Sagarin, Schless, Sagarin, Neigher & Simon, Bridgeport, Conn., for Stephen and James Ahern.

Robert E. Beach, Jr., Asst. State's Atty., Wallingford, Conn., for Arnold Markle.

Robert E. Reilly, East Haven, Conn., for Joseph McCormack.

Henry Fisher, New Haven, Conn., for City of New Haven and Bd. of Police Com'rs, namely Clarence Butcher, Frederick Danforth, Daniel Greer, Frank Mongillo, Sheila Taub and Marshall Weiner, and Pasquale Carrieri, Vincent De Rosa, Arthur Lee, George Mingione, Leonard Pastore, Robert Lillis, John O'Connor, John Maher, Walter Connor, Richard C. Lee, Nicholas Pastore, James H. Heinz, Thomas Reilly, William L. White, and Everitt Nichols, all in their official capacities.

Richard Blumenthal, U.S. Atty., Frank H. Santoro, Asst. U.S. Atty., New Haven, Conn., Stanley Dalton Wright, Trial Atty., Dept. of Justice, Civ. Div., David H. White, Dept. of Justice, Washington, D.C., for Raymond Connally, William Glossa, Theodore Gunderson and George Phillips.

Donald F. Keefe, Robert K. Ciulla, Tyler, Cooper, Grant, Bowerman & Keefe, William J. O'Keefe, Judith A. Maynes, New Haven, Conn., for SNET.

## RULING ON MOTION FOR CLASS CERTIFICATION

EGINTON, District Judge.

*Facts*

Plaintiffs commenced this action on behalf of themselves and all similarly situated persons against various present and former federal, state and municipal officials, the City of New Haven ("City") and the Southern New England Telephone Company ("SNET"). The complaint alleges that from approximately 1964 until 1971, defendants, acting in conspiracy, engaged in an extended and intensive campaign of illegal electronic surveillance, wiretapping, and

bugging without prior judicial authorization, as well as harassment, vandalism and terrorism, specifically designed to destroy the privacy, curtail the speech and associations, and disrupt the lives, of the plaintiffs and large numbers of other persons similarly situated, thereby violating the first, fourth, fifth, sixth, ninth and fourteenth amendments to the United States Constitution, the anti-wiretapping provisions of the Omnibus Crime Control Act of 1968, Title III, 18 U.S.C. §§ 2510–2520 (1976), the Federal Communications Act of 1934, 47 U.S.C. § 605 (1976), 42 U.S.C. §§ 1983, 1985 (1976), and the Constitution, statutes and laws of the state of Connecticut.

Plaintiffs seek compensatory damages from the defendants and, for violations of 18 U.S.C. §§ 2510–2520, not less than $100 per day for each day of violation or $1,000, whichever is higher, for each plaintiff and class member, together with punitive damages. Plaintiffs seek injunctive relief restraining the defendants Markle and the members of the Board of Police Commissioners from disclosing to any person other than individual plaintiffs and their attorneys the existence or contents of any illegally intercepted conversation and compelling the defendants to return to each plaintiff or his or her attorney all records, tapes, notes, transcripts or other tangible evidence concerning the existence or contents of any such conversation.

Jurisdiction is invoked under 18 U.S.C. § 2520 and 28 U.S.C. §§ 1331, 1337, 1343, and 1391(e).

Plaintiffs seek certification of the following sub-classes:

(a) The sub-class of all persons whose wire and oral communications were intercepted, disclosed and/or used by the defendants in violation of law.

(b)(i) The sub-class of all people who have been arrested, tried, or convicted in criminal proceedings in the State of Connecticut in which unknown to them, evidence and the fruits thereof, secured through defendants' unlawful interception, disclosure and use of the plaintiffs'

wire and oral communications, were unlawfully used against them; and

(ii) The sub-class of all people whose privileged oral and wire communications with their attorneys were intercepted, disclosed and used by the defendants in violation of the Sixth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Connecticut.

Plaintiffs initially filed a motion to certify as a class action in May of 1978. Thereafter, in September, 1978, oral argument was held before then District Judge Jon O. Newman, following which the defendants moved to delay consideration of the class certification motion until after all parties in the case had been afforded the opportunity to review various documents in the custody of the City of New Haven which had theretofore been made available only to the court or to the plaintiffs. In September, 1979, after the case was transferred to the undersigned, a decision on the class certification motion was again deferred, pending disclosure of additional documents and review by all parties. The motion has again been renewed and is now ripe for consideration.

*Sub-class (a)*

This court will first consider plaintiffs' request that a sub-class be certified of all individuals whose wire or oral communications were intercepted. The court will initially discuss three of the prerequisites for class certification under Rule 23(a) of the Federal Rules of Civil Procedure; existence of a class, impracticality of joinder, and the adequacy of representation, the latter prerequisite also encompassing the requirement of typicality of claims. *See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562–63 (2d Cir.1968). The requirement of sub-section 23(a)(2) (commonality of issues) will be discussed in connection with the propriety of class certification under sub-section 23(b)(3).

*Existence of a class*

█ To be maintainable as a class action, a suit must meet all the requirements set forth in Rule 23(a) and also fall within one

of the sub-sections of 23(b). In addition, although not specifically mentioned in the rule, an essential prerequisite of an action under Rule 23 is that there must be a "class." 7 C. Wright & A. Miller, Federal Practice and Procedure § 1760, at 579 (1972). The class must be defined in unambiguous terms and if the class description is not sufficiently specific, class certification may be denied. *Rappaport v. Katz,* 62 F.R.D. 512, 513 (S.D.N.Y.1974).

█ In the instant suit, defendants have objected to the proposed description of plaintiffs' first sub-class on the ground that it is so vague and amorphous as to make it administratively impossible to determine who or how many plaintiffs fall within the class. The court disagrees, and finds that the proposed criterion of class membership (interception of one's oral or wire communications) is clear, precise, and framed in terms of objective behavior.

The proposed definition contrasts sharply with the class descriptions rejected in the cases cited by the defendants in support of their position. Invariably, the rejected descriptions contained inherently ambiguous terms or references to future class members, conditioned membership on an individual's state of mind, or were drafted so broadly as to encompass individuals with little or no connection with the litigation. For example, in *Rappaport v. Katz, supra,* at 514, cited by the defendants, the court rejected a proposed class of "all persons who wish and are legally entitled to be married by the Clerk of the City of New York or by his agents" on the ground that it was so amorphous as to be changeable from day to day. The court noted that class membership was incapable of ascertainment, "for any such characterization would require an inquiry into the state of mind of each particular individual." *Id.* at 515; *see also, American Servicemen's Union v. Mitchell,* 54 F.R.D. 14, 17 (D.D.C.1972) (court rejected a proposed class of all present and future holders of unpopular political beliefs.); *Eisman v. Pan American World Airlines,* 336 F.Supp. 543, 547 (E.D. Pa.1971) (court refused to certify two sub-

classes, one comprised of all people over twenty-six who were not students and either had purchased airline tickets in the past or would purchase such tickets in the future, and the second comprised of all those persons between the ages of twelve and two who were not students and who either had purchased tickets in the past or would purchase tickets in the future.); *Koehler v. Ogilvie,* 53 F.R.D. 98, 100–01 (N.D.Ill.1971), *aff'd mem.,* 405 U.S. 906, 92 S.Ct. 938, 30 L.Ed.2d 777 (1972) (court rejected a proposed plaintiff class challenge to divorce laws brought on behalf of all divorced and married men in the state of Illinois on the ground that it was so broadly defined as to include individuals who might never come into contact with the divorce laws and even included several of the defendants.); *Chaffee v. Johnson,* 229 F.Supp. 445, 448 (S.D.Miss.1964), *aff'd per curiam on other grounds,* 352 F.2d 514 (5th Cir.1965), *cert. denied,* 384 U.S. 956, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966) (court rejected a proposed class of "all persons who are workers for the end of discrimination and segregation in Mississippi ... and for the exercise and preservation of civil rights generally in Mississippi," on the ground that such description depends on an individual's state of mind.).

The court finds that the proposed sub-class in this instance has been sufficiently defined.

█ Defendants next argue that the proposed class should not be certified because the plaintiffs have not and cannot identify with substantial certainty any individual who meets the criterion for class membership. According to the defendants, even the named plaintiffs in the instant suit have established not more than a mere suspicion that they were victims of an illegal intercept. The other members of the class remain completely unidentified.

The court rejects such a contention. In point of fact, plaintiffs have marshalled an impressive array of evidence establishing beyond mere suspicion the identity of at least 500 individuals whose wire communi-

cations were intercepted.[1] Because the criterion of class membership, interception, is also an element of liability which each plaintiff must establish at trial by a fair preponderance of the evidence, class membership cannot be conclusively delineated until a final adjudication on the merits of the instant dispute. However, that fact alone will not defeat class certification where, as in this case, plaintiffs have made a substantial showing as to the identity of a substantial number of the members of the class.

More troubling to this court is the fact that the terms of the class description also encompass a potentially large and shadowy body of individuals who may have made incoming calls to tapped phones, but who were never identified even by those intercepting their calls. Defendants argue that because of the existence of this group of victims whose identity · has never been known or recorded by anyone, the actual boundaries of the class will remain uncertain, structuring proper notice will be difficult, and defendants will be frustrated in their efforts to discover the identity of those class members who intend to pursue their claims at trial. Although the inability to identify all members of a class has frequently been held not to defeat the right to

bring a class action, *Gatling v. Butler,* 52 F.R.D. 389, 392 (D.Conn.1971); *Dolgow v. Anderson,* 43 F.R.D. 472, 492–93 (E.D.N.Y. 1968), *rev'd on other grounds,* 438 F.2d 825 (2d Cir.1970); *Fischer v. Kletz,* 41 F.R.D. 377, 384 (S.D.N.Y.1966), this court shares the defendants' concerns, particularly since this class appears to be one most appropriately certified under sub-section 23(b)(3), which requires notice to all class members. *See generally, Yaffe v. Powers,* 454 F.2d 1362, 1366 (1st Cir.1972).

One method of avoiding the difficulties cited by the defendants would be to redefine the class to include only those individuals identified by plaintiffs as potential class members. Unfortunately, such an approach would defeat one of the primary advantages of certifying the proposed class; increasing the number of individuals aware of the injury they have suffered and providing them with some means of redress.

A preferable solution is to certify the class as defined, notifying by mail those individuals who have been identified, and notifying by publication those individuals who are as yet unidentified.[2] The notices would properly contain a description of the instant suit and a list of telephone numbers plaintiffs believe to have been tapped. Those individuals who believe they placed

---

1. During 1977, for approximately 10 months, the New Haven Police Commission conducted an investigation into the wiretapping operation alleged in the instant suit. The tangible results of the investigation include evidence of wiretaps in the form of two brown paper bags holding paper tapes from wiretap machines, the wiretap machines themselves, and a box of index cards listing almost 500 names alleged by plaintiffs to have been compiled in the course of wiretapping.

The index cards were produced by defendant City of New Haven in the instant suit pursuant to plaintiffs' discovery request. There are 577 such cards. Plaintiffs allege that 233 list telephone numbers which were either directly tapped or intercepted on wiretaps. 268 contain almost 500 names of individuals tapped. 76 list the nicknames of persons overheard on wiretaps or directly subject to wiretaps. Excerpts from the transcripts of testimony taken during the Police Commission hearings as well as the interim report of the defendant Police Commission provide strong support for plaintiffs' contention that the names and numbers on the

cards are the names and numbers of wiretap victims. *See* Interim Report of the Board of Police Commissioners of the City of New Haven on Its Investigation of Illegal Wiretapping, Vol. I, at 27 (January 1978); Wiretap Hearing Before the Board of Police Commissioners, June 27, 1977, at 179–88 (testimony of Pasquale Carrieri); *id.* at 228–38 (testimony of Walter Connor); Hearing of June 29, 1977, at 352–68 (testimony of Robert Lillis); Hearing of June 30, 1977, at 608–18 (testimony of John Maher).

2. Fed.R.Civ.P. 23(c)(2) provides that where a court permits a class action to be maintained under subsection (b)(3), it must direct to the members of the class "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

With regard to those potential class members who have not yet been identified, notice by publication would seem consistent with the strictures of 23(c)(2).

calls to the tapped phones during the relevant time period would be invited to come forward and identify themselves as class members. In order to establish the contours of the class and give defendants as well as plaintiffs some indication of the number and identity of those individuals desirous of presenting their claims at trial, notice to all individuals both identified and unidentified would inform all potential class members that those who did not seek exclusion would be required to take some minimal affirmative action by a certain cut-off date as a condition of final recovery. Unlike the situation which prevailed under original spurious class action Rule 23, those passive individuals who failed to take the necessary affirmative action would still be bound by the judgment. This procedure would have the advantage of increasing the number of individuals able to vindicate their rights by including even presently unidentified individuals in the class. At the same time, all parties would have some definite idea of the contours of the class and of the identity of its members by the cut-off date established. *Cf. Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452, 459 (E.D.Pa.1968) (discussing requirement of affirmative action by class members). In addition, such a procedure disposes of defendants' argument that the plaintiffs cannot adequately represent the class as defined, a point that will now be considered.

*Adequacy of Representation*

■ Under Rule 23(a)(4), adequacy of representation must be closely scrutinized by the court before certifying a proposed class. In *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562–63 (2d Cir.1968), the court articulated the following factors to be considered in determining whether a class is adequately represented by its named representatives: (1) that the parties' attorney be qualified, experienced and generally able to conduct the proposed litigation; (2) that the litigants not be involved in a collusive suit; (3) that the interests of the representative party be coextensive with the interests of the entire class, that is, the named plaintiffs' claim must be typical of that of the entire class as required by Rule 23(a)(3); (4) that the interests of the named plaintiffs not be antagonistic to those of the remainder of the class.

Defendants do not contest the qualifications, experience, and ability of counsel for the named plaintiffs to conduct the proposed litigation, nor do defendants allege that the plaintiffs are involved in a collusive suit. Plaintiffs clearly meet the third requirement. Plaintiffs' claims as to the type of injury suffered (illegal interception of their wire communications) and the source of the injury (the defendants' conspiracy) are typical of the entire class.

■ Defendants have challenged plaintiffs' ability to represent the class on the theory that plaintiffs' interests may be antagonistic to those of the remainder of the class. Defendants note that once the class has been certified, plaintiffs are duty bound to promote vigorously the claims of all absentee members of the class, since those individuals will be bound by the final judgment rendered. Defendants maintain that such vigorous promotion may conflict with the privacy interests of many absentee class members in that it may require revealing their names and private matters in their lives. For example, certain individuals with gambling interests are alleged to have been subjected to wiretapping. It is extremely unlikely that persons with such interests would desire to have plaintiffs pursue their claims.

Defendants acknowledge that if the class is certified under Rule 23(b)(3) those individuals who receive notice of this suit may choose to opt out of the class and thereby preserve their privacy. However, as defendants argue, notice to all presently identified class members cannot be guaranteed. An individual who fails to opt out only because he is unaware of the suit may later find to his chagrin that his private life has become the subject of public litigation.

The procedure outlined in the previous section disposes of this objection. By requiring all class members who do not seek exclusion to take some affirmative action as

a condition of recovery, the court is assured that only the claims of those individuals who have had the opportunity to balance their interest in maintaining their privacy against their desire to have their rights redressed will be litigated.

*Joinder Impracticable*

■ Defendants urge that, in view of the extensive publicity occasioned by this suit, as well as the fact that plaintiffs have intervened frequently and with relative ease up until now, the court must assume that all identified parties have joined the litigation and, therefore, class certification is unnecessary. This court views past or future intervention by all potential plaintiffs as unlikely. By virtue of the very nature of the injury alleged, wiretap interception, in many instances members of the class may be unaware, in spite of the general publicity that has attended this suit, that their particular communications were intercepted. Thus, absent class certification and direct notice informing them of their rights, many class members may not intervene in the present suit or bring actions against defendants in the future. Moreover, as noted above, plaintiffs have identified a minimum of 500 potential class members. Accordingly, both the number of plaintiffs and the circumstances of the instant suit render joinder of all plaintiffs impracticable.

*Rule 23(b)*

In addition to the requirements of Rule 23(a), plaintiffs must satisfy one of the requirements of Rule 23(b) in order to obtain class certification. It is plaintiffs' position that the instant action may be maintained under the provisions of sub-sections 23(b)(1)(A), 23(b)(2) or 23(b)(3). Of the three, certification under 23(b)(3) appears most appropriate to this court.

Rule 23(b)(1)(A) provides that a class action may be maintained when:

> the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent ·or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class . . .

■ Certification under Rule 23(b)(1)(A) is proper only where the class representatives seek injunctive relief to alter an on-going course of conduct which is either legal or illegal as to all members of the class. *See McDonnell Douglas Corp. v. United States District Court,* 523 F.2d 1083, 1085–86 (9th Cir.1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *Landau v. Chase Manhattan Bank,* 367 F.Supp. 992, 997 (S.D.N.Y.1973); *Tober v. Charnita, Inc.,* 58 F.R.D. 74, 81 (M.D.Pa. 1973). The language of the sub-section indicates that it applies only to actions in which there is not only a risk of inconsistent adjudications but also of incompatible conduct, that is, where a defendant is sued by different plaintiffs asking for different and incompatible affirmative relief. Hence, it does not reach the case in which different individuals sue the same defendant for monetary relief and one may lose while the other may win. *Landau v. Chase Manhattan Bank, supra.* As the Ninth Circuit indicated in *La Mar v. H. & B. Novelty & Loan Co.,* 489 F.2d 461, 466 (9th Cir.1973), "[i]nfrequently, if ever, will this [certification under Rule 23(b)(1)(A)] be the case when the action is for money damages." Similarly, when, as in this case, the incidental injunctive relief requested creates the risk of inconsistent but not incompatible standards of conduct, certification under Rule 23(b)(1)(A) is improper. Thus, neither of the plaintiffs' claims for injunctive or monetary relief is certifiable under Rule 23(b)(1)(A).

■ Sub-section 23(b)(2) is likewise inapplicable. That section provides for class certification when:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief òr corresponding declaratory relief with respect to the class as a whole. . . .

As the Second Circuit noted in *Eisen v. Carlisle & Jacquelin, supra,* 391 F.2d at 564, "[s]ubsection (b)(2) was never intended to cover cases like the instant one where the primary claim is for damages, but is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory." Although plaintiffs do request injunctive relief, it is directed primarily against the custodians of certain records, and as such it does not apply to all of the defendants. More importantly, the injunctive relief requested is at best incidental to the monetary relief sought by the plaintiffs.

*Rule 23(a)(2) and 23(b)(3)*

Fed.R.Civ.P. 23(a)(2) provides that one of the prerequisites of a class action is that there exist "questions of law or fact common to the class." Second, if such common questions exist, Rule 23(b)(3) requires a finding that they "predominate over any questions affecting only individual members [of the class], and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Plaintiffs' allegations of the existence of a conspiracy to illegally intercept the wire and oral communications of the members of the class satisfy the requirement of Rule 23(a)(2) that there be questions of law or fact common to the class. Allegations of a conspiracy to violate the rights of an individual or group of individuals or a course of conduct intended to violate their rights has been held in a number of cases to create at least one question of law or fact common to all members of the class of victims. *Eisen v. Carlisle & Jacquelin, supra,* 391 F.2d at 562; *Green v. Wolf Corp.,* 406 F.2d 291, 300 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Fischer v. Kletz,* 41 F.R.D. 377, 380–82 (S.D.N.Y.1966); *Dolgow v. Anderson,* 43 F.R.D. 472, 489 (E.D.N.Y.1968), *rev'd on other grounds,* 438 F.2d 825 (2d Cir.1970).

■ The fact that some individual questions of law and fact also must be decided will not necessarily defeat a request for class certification. For example, actions for securities fraud which customarily allege a conspiracy or common course of conduct intended to defraud a group of investors have been frequently certified as class actions notwithstanding the existence of the individual issues of misrepresentation and reliance. *Eisen v. Carlisle & Jacquelin, supra,* 391 F.2d at 562; *Green v. Wolf Corp., supra,* 406 F.2d at 300–01; *Fischer v. Kletz, supra; Kronenberg v. Hotel Governor Clinton, Inc.,* 41 F.R.D. 42, 45 (S.D.N.Y.1966).

However, where individual issues relating to both liability and damages threaten to splinter the class action into a series of individual trials, certification has been denied. *Plekowski v. Ralston Purina Co.,* 68 F.R.D. 443, 453–54 (M.D.Ga.1975), *appeal dismissed,* 557 F.2d 1218 (5th Cir.1977); *Banks v. Travelers Insurance Co.,* 60 F.R.D. 158, 163 (E.D.Pa.1973); *Schaffner v. Chemical Bank,* 339 F.Supp. 329, 334–36 (S.D.N.Y. 1972); *Lah v. Shell Oil Co.,* 50 F.R.D. 198, 200 (S.D.Ohio 1970).

■ In the instant suit, whether individual or common issues predominate is a close and difficult question, but one that must ultimately be resolved in favor of certifying the class. Defendants contend that the legality of the surveillance program, the calculation of damages, and the affirmative defense of the statute of limitations each create individual issues which dominate the action and militate against class certification. The court will consider each element in turn.

Defendants urge with some force that the legality of the surveillance program as a whole and the defendants' liability with respect to each plaintiff cannot be litigated on a class-wide basis. Instead, defendants contend, each plaintiff must individually establish that his or her communications were intercepted at least once during the relevant time period from 1964 through 1971 and must further establish the source of the intercept. Second, the legality of the defendants' conduct must be judged on the facts and circumstances of each individual intercept. That is, the court must conduct an individual inquiry as to the reasonableness of each warrantless tap. Defendants

additionally note that the standards of reasonableness will vary depending on the date of the intercept. The legality of intercepts conducted prior to the effective date of Title III will depend on the effect of (a) then existing applicable state statutes, (b) the provisions of the Federal Communications Act of 1934, 47 U.S.C. § 605, and (c) the decision of the Supreme Court in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The legality of the post-Title III intercepts would of course depend on the provisions of that statute as well as the standards of the fourth amendment as articulated in *Katz,* and *United States v. United States District Court,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) and their progeny.

Defendants conclude that the extensive inquiry into the circumstances of each individual tap necessary to establish its illegality far outweigh any common questions created by plaintiffs' assertion of the existence and execution of a conspiracy to conduct a warrantless surveillance program.

Defendants' argument, however, does not come to grips with plaintiffs' theory of the case. In plaintiffs' view, a warrantless surveillance program conducted secretly and without any sort of prior judicial authorization is presumptively illegal both before and after 1968.[3] If plaintiffs' characterization of the law is correct, and now is not the time to make a judgment on that point, *see Yaffe v. Powers,* 454 F.2d 1362, 1366 & n. 2 (1st Cir.1972); *Driver v. Helms,* 74 F.R.D. 382, 404 (D.R.I.1977), *modified on other grounds,* 577 F.2d 147 (1st Cir.1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979); *Fogel v. Wolfgang,* 47 F.R.D. 213, 215 n. 4 (S.D.N.Y.1969), the legality of the alleged warrantless surveillance program can in fact be adjudicated on a class-wide basis. Because of possible significant differences in the law before and after passage of Title III, the class will be divided into two sub-classes, those whose communications were intercepted before passage of Title III and those intercepted subsequently.

If each sub-class is successful in establishing the existence of the warrantless surveillance program and its presumptive illegality during the relevant period, each individual sub-class member, in order to establish liability, need only establish that at least one of his communications was intercepted in furtherance of the conspiracy. No elaborate inquiry into the question of whether an intercept was reasonable or justified without a warrant would be necessary. Accordingly, the significant economies achieved by permitting the resolution in one litigation of common questions relating to the existence, character and legality of the alleged conspiracy would certainly outweigh the limited individualized factual inquiry necessary.

Should it become apparent that plaintiffs' characterization of the law either before or after 1968 is in fact incorrect, and individual issues going to the reasonableness of each tap threaten to predominate over those issues common to each sub-class, this court retains the power to decertify either or both sub-classes under Fed.R.Civ.P. 23(c)(1) and to permit the action to proceed on an individualized basis. *Eisen v. Carlisle & Jacquelin, supra,* 391 F.2d, at 566; *Alameda Oil Co. v. Ideal Basic Industries, Inc.,* 326 F.Supp. 98, 105 (D.Colo.1971); *Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335, 345–46 (D.Minn.1971).

Defendants also argue that because each plaintiff claims compensatory and punitive damages as well as the liquidated damages available under 18 U.S.C. § 2520 (1976) to those tapped after the effective date of Title III, damages cannot be assessed on a class-wide basis. Even assuming defendant is correct, the weight of judicial authority has rejected the proposition that differences in the amount or computation of damages claimed by each class member will cause a

---

**3.** It is inappropriate, at this stage of the proceeding, for the court to determine the merits of the plaintiffs' analysis. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). The plaintiffs, however, have presented a colorable claim under existing law. *See generally United States v. United States District Court, supra; Katz v. United States, supra.*

class action to fail. *Green v. Wolf Corp., supra,* 406 F.2d, at 300–01; *Piel v. National Semiconductor Corp.,* 86 F.R.D. 357, 373 (E.D.Pa.1980); *Fogel v. Wolfgang,* 47 F.R.D. 213, 217 (S.D.N.Y.1969). Instead, the majority of courts have ruled that the issue of damages should be severed from that of liability and tried individually should liability be determined in favor of the class. 7A Wright & Miller, *supra* § 1781, at 89–90 nn. 30 & 31.

▓▓▓ Similarly, "the existence of individual statute of limitations problems does not affect the propriety of a class action determination." *Seiden v. Nicholson,* 69 F.R.D. 681, 686 (N.D.Ill.1976); *Bisgeier v. Fotomat Corp.,* 62 F.R.D. 113, 116 (N.D.Ill.1972). In the instant suit, plaintiffs allege that the statute of limitations was tolled prior to commencement of this action by virtue of a conspiracy on the part of the defendants to fraudulently conceal their activity. The issue of fraudulent concealment is common to all class members. *Bisgeier v. Fotomat Corp., supra,* at 115. Moreover, even if defendants attempt to cross-examine each plaintiff on the question of why due diligence could not have led to discovery of the facts and of the cause of action, this court could simply sever the issue of the statute of limitations and try it along with the individualized damage trials. "[C]ourts have routinely made provision for separate trials or determinations of damages, in which individual claims and defenses on statutes of limitation, reliance, knowledge, etc., can be adjudicated." 3B Moore, *supra,* ¶ 23.45[1], at 23–316 n. 13.

Rule 23(b)(3) also requires that the class action device must be "superior to other available methods for the fair and efficient adjudication of the controversy." As outlined above, substantial economies would accrue by permitting the plaintiffs to resolve as a class, in a single proceeding rather than in a series of individual suits, the issue of the extent and legality of the alleged surveillance program. Admittedly, those same economies could also be achieved

by freely permitting individuals to intervene in the instant litigation as the court has done thus far.

In the instant suit it does not appear that the expense of individual actions would prevent individual plaintiffs from vindicating their rights. The economies achieved by intervening in the pending litigation as well as the generous economic incentives provided by Title III in the form of liquidated and punitive damages as well as attorneys fees virtually guarantee that the instant action will go forward even if not certified as a class. As previously discussed, however, it is unrealistic to assume that in the instant suit all potential plaintiffs are aware of the injury suffered and are able to bring an individual suit or to intervene in the pending litigation absent class certification. As plaintiffs argue, many victims have not resided in Connecticut since before 1977, and are thus entirely unaware of the local publicity on the issue. Even those remaining in Connecticut may have no idea that they were among the individuals illegally wiretapped and may never have such knowledge absent class certification and notice.[4] Thus, in the interest of increasing the number of individuals able to vindicate their rights, class certification coupled with notice attempted to all potential class members is the best available method for the fair and efficient adjudication of the controversy.

*Sub-class (b)(i) and (b)(ii)*

▓▓▓ There is no basis for the separate certification of plaintiffs' second sub-class (b)(i) to include all individuals who contend that they are entitled to money damages for illegal arrests, trials and convictions based on illegal intercepts of their communications because there is no issue common to all members of the sub-class other than the existence and legality of the surveillance program. As the defendants argue in their briefs, whether an arrest, trial or conviction was legal will not be resolved by finding that information "tainted" by reason of illegal electronic surveillance was a consideration in the decision to take such

---

4. The names produced during the course of discovery in this case include many persons who have never been remotely linked to either political or criminal activity, and include such

diverse categories as prosecutors, police officials, attorneys, physicians, clergymen and editors, many of whom would have no reason to believe themselves to be objects of a wiretap.

action. Instead, resolution of the issue would require a review of the totality of the circumstances concerning the arrest, trial and conviction of each plaintiff to determine whether there was an independent basis for governmental action rendering any alleged misconduct harmless. *See United States v. Sacco,* 563 F.2d 552, 557–59 (2d Cir.1977), *cert. denied,* 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978); *United States v. Russo,* 527 F.2d 1051 (10th Cir. 1975), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 831 (1976); *United States v. Bynum,* 513 F.2d 533 (2d Cir.), *cert. denied,* 423 U.S. 952, 96 S.Ct. 357, 46 L.Ed.2d 277 (1975).

Plaintiffs themselves recognize that after an initial determination of the legality of the surveillance program "there would thereafter be separate issues relating to use of the fruits in criminal proceedings against sub-class members, and intercepts between them and their attorneys. Though those subsequent issues cannot be treated on a class-wide basis, the legality of the intercepts can." Memorandum in Support of Plaintiff's Motion for Class Action Certification, at 15.

Likewise, a determination of the injury sustained by the members of the proposed (b)(ii) sub-class of all individuals whose privileged oral and wire communications with their attorneys were intercepted, disclosed and used by the defendants would require a case by case analysis after a class-wide determination of the existence and legality of the surveillance program. Thus, there is no issue other than the existence and legality of the surveillance program common to all members of either sub-class (b)(i) or sub-class (b)(ii). Because the issue of the existence and legality of the surveillance program is the precise issue common to all members of sub-class (a) and because sub-class (a) by its terms includes all the individuals in sub-classes (b)(i) and (b)(ii), there is no basis for certifying the latter two groups as separate sub-classes.

In conclusion, the court finds that a subclass of all those individuals whose wire and oral communications were intercepted, disclosed and/or used by the defendants prior to the effective date of Title III may be certified under Fed.R.Civ.P. 23(b)(3) for the purpose of adjudicating their claims for injunctive and declaratory relief and their claim that the defendants are liable in damages to them. A second sub-class of all individuals whose wire and oral communications were intercepted, disclosed and/or used by the defendants after the effective date of Title III may be certified under the same provision for the same purpose. Calculation of the damages incurred by each member of the two sub-classes will be tried on an individual basis. Plaintiffs' other two proposed sub-classes are not entitled to class certification.

Counsel are hereby directed to submit to this court within twenty days from the date of this opinion an outline of a proposed method of compliance with the requirements of Fed.R.Civ.P. 23(c)(2), including proposed forms of notice for mail and publication. Copies of such proposals shall be furnished to opposing counsel, and objections and comments may be filed within ten days thereafter. The notices should include a statement that members of the class not electing to be excluded therefrom will be required to file statements of their intent to pursue their claim on or before a specified date, or be forever barred.

So Ordered.