442 F.Supp. 71 (1977)
In re REA EXPRESS, INC., Bankrupt.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff-Appellee,
v.
REA EXPRESS, INC., Defendant-Appellant.
No. 75 B 253.
United States District Court, S. D. New York.
December 20, 1977.
*72 Jerome Murray, Hendler & Murray, Jason Wallach, New York City, for plaintiff-appellee.
William M. Kahn, Whitman & Ransom, Joseph A. Goldblum, New York City, for defendant-appellant.

OPINION
GRIESA, District Judge.
This appeal raises the legal issue whether, in an arrangement under Chapter XI of the Bankruptcy Act, workmen's compensation payments on behalf of the debtor in possession to employees injured before the commencement of the arrangement proceeding are "costs and expenses of administration" under § 64a(1) of the Bankruptcy Act, 11 U.S.C. § 104(a)(1). This Court reverses the decision of the Bankruptcy Court, Hon. John J. Galgay, and holds that they are not.
Defendant REA commenced a Chapter XI proceeding on February 18, 1975. It operated its business as debtor in possession until November 6, 1975, when it was adjudicated a bankrupt.
The present appeal involves workmen's compensation liabilities of REA arising out of injuries sustained by REA employees[1] during the period 1954-1961, when REA was a self-insurer. REA became liable to make periodic compensation payments and in the cases in question the benefits were still due into the period of the Chapter XI proceeding.
Plaintiff St. Paul Fire & Marine Insurance Co. is a surety with respect to the REA compensation liabilities in issue. Since late 1974 REA has defaulted on its compensation obligations, at least as to the claims involved in this action. Thus the compensation payments made during the period of the Chapter XI proceeding were made by St. Paul on behalf of REA.
St. Paul now sues REA asserting that it is subrogated to the rights of the compensation beneficiaries. Further, St. Paul contends that compensation liabilities of REA during the period of the Chapter XI proceeding should be treated as costs of administering the debtor's estate.

The Decision Below
This action was commenced on June 16, 1975. St. Paul's complaint requested the Bankruptcy Court to enter an order (1) directing REA to reimburse St. Paul for all compensation payments made during the Chapter XI proceeding; and (2) directing that REA itself make all future compensation payments.
Judge Galgay handed down his decision March 3, 1976. Judge Galgay sustained the first claim, and held that St. Paul should be reimbursed for compensation payments made during the Chapter XI proceeding and that such reimbursement was entitled to priority as "costs and expenses of administration" under Section 64a(1) of the Bankruptcy Act. This ruling is challenged on appeal. The judge denied the second claim  for an order compelling REA itself to make further compensation payments  as moot, since REA had been adjudicated a bankrupt on November 6, 1975. This ruling is not challenged on appeal.
Judge Galgay considered that the initial question for determination was "whether REA was obligated during the period in *73 which it was a debtor-in-possession to pay the Workmen's Compensation awards in question." Although finding no express statutory or case law authority on the point, the judge held that equity required that REA should be continually liable for the periodic compensation payments and that it would be inequitable to treat such obligations as ordinary debts which are held in abeyance during the pendency of the Chapter XI proceeding. The judge cited two cases, Bowen v. Hockley, 71 F.2d 781 (4th Cir. 1934), and In re New York State Rys., 16 F.Supp. 717 (N.D.N.Y.1936).[2] The judge recognized that these involved federal equity receiverships, rather than Chapter XI or bankruptcy proceedings, but held that their views on the equitable requirements of continuing workmen's compensation payments during receivership apply equally to a Chapter XI proceeding. He further held that REA's liability for continued compensation payments should be treated as "costs and expenses of administration" under Section 64a(1) of the Bankruptcy Act.
Judge Galgay went on to hold that, since St. Paul had made the compensation payments on REA's behalf, it was subrogated to the rights of the compensation claimants, and was entitled to file a claim for priority payment under Section 64a(1).

Discussion
Section 64a(1)[3] accords the first priority in bankruptcies and arrangements to "the costs and expenses of administration, including the actual and necessary costs of preserving the estate subsequent to filing the petition." "Where priorities under § 64 are in issue, a strict construction must be placed thereon and the burden falls on those asserting a priority to establish that they come within the intended class." 3A Collier on Bankruptcy ¶ 64.02[6] (14th ed. J. Moore 1975). See Goldie v. Cox, 130 F.2d 690, 693 (8th Cir. 1942).
Collier describes costs and expenses of administration in terms which emphasize that they basically relate to liabilities arising during the period of administration:
"Debts incurred by the trustee in the course of operating the bankrupt's business under the supervision of the bankruptcy court are entitled to first priority as expenses of administration after an order of liquidation is entered. Thus claims arising from purchases and sales in retail merchandising, royalties for coal mined, employees' wages, building operations, and from taxes assessed against the business during the trustee's period of control, are entitled to such priority." 3A Collier ¶ 64.105[2], at 2095-96.
The only case directly in point is the unreported decision in In re Transamerican Freight Lines, Inc., No. 75-94047-B (E.D. Mich. Jan. 12, 1977), which holds that workmen's compensation benefits for injuries incurred prior to the filing of a Chapter XI proceeding cannot be properly classified as costs and expenses of administration under Section 64a(1).
Considerable light is thrown on the question by the treatment accorded to workmen's compensation claims in Section 63. This section defines debts of a bankrupt (and hence of a debtor in a Chapter XI proceeding) which may be proved and allowed against the estate. Section 63a(6), 11 U.S.C. § 103(a)(6), provides:
"(a) Debts of the bankrupt may be proved and allowed against his estate which are founded upon . . . (6) an award of an industrial-accident commission, body, or officer of any state having jurisdiction to make awards of workmen's compensation in case of injury or death from injury, if such injury occurred prior to adjudication; . . ."
It appears clear that the workmen's compensation claims against REA involved in *74 this case fall within Section 63a(6). I am not prepared to state that merely because a type of claim is a provable debt under Section 63 it can never be a cost of administration under Section 64. However, it surely must be true that the basic statutory scheme distinguishes ordinary provable debts under Section 63, which are deferred upon the filing of a Chapter XI or straight bankruptcy proceeding, from costs and expenses of administration, which must be paid during the proceeding on a current basis.
It should be noted that at one time workmen's compensation claims for injuries occurring before a bankruptcy proceeding did not have provable status in bankruptcy in the sense of being ordinary provable debts. Lane v. Industrial Commissioner, 54 F.2d 338 (2d Cir. 1931), cert. denied, Industrial Commissioner of State of New York v. Irving Trust Co., 286 U.S. 543, 52 S.Ct. 496, 76 L.Ed. 1280 (1932); In re Ostrowski, 4 F.Supp. 568 (W.D.N.Y.1933). However, as described above, workmen's compensation claims are now included in the Section 63 provisions regarding the debts which are provable in a bankruptcy or Chapter XI proceeding. The change in the law was made in 1934. 48 Stat. 911.
The policy underlying the provision for administrative costs in Section 64 appears to preclude the treatment of the workmen's compensation claims here as such costs. The purpose of according first priority to administrative expenses in a Chapter XI proceeding is to encourage current employees and current suppliers to deal with the debtor while it is attempting to survive and arrive at an arrangement as provided by law. Clearly current wages must be paid as administrative expenses, and the same would seem to be true for compensation claims relating to injuries occurring during employment by the debtor in possession. Any other rule would clearly discourage employees from working for a debtor in possession. However, where rights to installment benefits arise from injuries occurring before the Chapter XI proceeding, there is no valid reason for distinguishing such rights from other pre-existing installment obligations, which are deferred and held in abeyance during the Chapter XI proceeding.
There are a number of decisions in analogous situations, a few of which are as follows. In Reading Co. v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), the Court held that damages resulting from the negligence of a Chapter XI receiver are entitled to Section 64a(1) priority. However, both the majority and dissenting opinions stated that this construction is limited to tort claims arising during the Chapter XI proceeding, and does not apply to damage claims arising from torts occurring prior to the commencement of the proceeding. Id. at 482, 485, 486, 88 S.Ct. 1759.
Numerous decisions have held that sums due to employees, such as vacation pay and severance pay, which become payable after the commencement of a Chapter XI or bankruptcy proceeding, are entitled to priority as expenses of administration only to the extent that they are attributable to events during the pendency of the proceedings. In re Mammoth Mart, Inc., 536 F.2d 950 (1st Cir. 1976); In re Straus-Duparquet, Inc., 386 F.2d 649 (2d Cir. 1967); In re Public Ledger, 161 F.2d 762 (3d Cir. 1947).
I should comment on the view of the bankruptcy judge about equitable considerations  i. e., the theory that REA should be held on equitable grounds to be continually responsible, after a Chapter XI proceeding is filed, for the payment of workmen's compensation claims; and that the surety who makes payments upon the default of REA should be entitled to stand in REA's shoes and obtain reimbursement against the estate, with such reimbursements treated as expenses of administration. I am constrained to disagree with this line of reasoning. It is clear that equitable considerations may not be relied upon to vary the strict priorities set out in Section 64a. I. C. Herman & Co. v. Taub, Hummel & Schnall, Inc., 497 F.2d 1301, 1303 (2d Cir.), cert. denied, 419 U.S. 885, 95 S.Ct. 153, 42 L.Ed.2d 125 (1974). In any event, my view of the equities differs from that of the bankruptcy judge.
*75 The compensation claimants were protected during the Chapter XI proceeding by REA's surety bond, and suffered no inequity. The surety itself suffers no inequity from being required to bear the risk of REA's insolvency, since the surety has been paid to assume such risk.
The decision of the Bankruptcy Court is reversed and the matter is remanded for proceedings consistent with this opinion.
So ordered.
NOTES
[1] REA and its predecessor corporation will be referred to as REA.
[2] The judge also relied on In re Charles Nelson Co., 29 F.Supp. 56 (N.D.Cal.1939), a case which is based upon a unique provision in the Longshoremen's and Harbor Workers' Compensation Act.
[3] Although Section 64 is included in Chapter VII of the Bankruptcy Act dealing with straight bankruptcy, it has been made applicable to Chapter XI. The same is true of Section 63, to be referred to later.