### In re COLUMBIA MOTOR EXPRESS, INC., Debtor.

### CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE AND PENSION FUNDS, Plaintiffs,

### v.

### COLUMBIA MOTOR EXPRESS, INC., Defendant.

Bankruptcy No. 381–02149.
Adv. No. 382–0850.

United States District Court,
M.D. Tennessee,
Nashville Division.

Aug. 29, 1983.

R. Jan Jennings, Nashville, Tenn., for plaintiffs.

M. Edward Owens, Jr., Chambers, Johnson, Wyckoff & Beckner, Nashville, Tenn., for defendant.

## ORDER

NIXON, District Judge.

Upon review of the report, findings of fact, conclusions of law, and recommendations of the Standing Master and objections to that report by the plaintiffs, it is the determination of this Court that the report of the Standing Master be approved.

Therefore it is ORDERED that the plaintiffs receive a judgment in the amount of $49,817.40 for unpaid pension contributions, $41,252.59 for unpaid health and welfare fund contributions, and $17,079.30 as liquidated damages and that plaintiffs' request for an injunction is denied. Upon proper application in the Bankruptcy Court, attorney fees will be considered.

## REPORT OF SPECIAL MASTER [1]

KEITH M. LUNDIN, Bankruptcy Judge, Special Master.

This matter is before the court on plaintiffs' complaint to recover postpetition pension fund contribution arrearages. The plaintiffs request a judgment for all delinquent amounts, plus interest and liquidated damages, and a mandatory injunction to compel future payments. The defendant/debtor argues that the unpaid contributions should be treated as administrative expenses and resolved through a plan of reorganization. After review of the briefs and arguments of the parties, applicable authority and the entire record, the special master recommends that the plaintiffs receive a judgment for all accumulated deficiencies and liquidated damages.

The defendant/debtor, Columbia Motor Express, Inc. ("Columbia"), a Tennessee corporation engaged in the interstate transportation of commerce, filed a voluntary petition under Chapter 11 on July 7, 1981. Columbia is operating the business as a debtor-in-possession. The plaintiffs are two Chicago, Illinois-based, multi-employer pension and health plans, Central States Southeast and Southwest Areas Health and Welfare Fund and Central States Southeast and Southwest Areas Pension Fund ("plaintiffs").

Columbia is a party to several collective bargaining agreements between itself and the United Brotherhood of Teamsters. The agreements create a pension fund and a health and welfare fund administered by the plaintiffs. Columbia is required to make payments to the plaintiffs for each of its employees. Since filing its bankruptcy petition on July 7, 1981, Columbia has failed

[1]. Following the Supreme Court's invalidation of the jurisdictional provisions of § 241(a) of the Bankruptcy Reform Act of 1978 in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and the expiration of the stay without intervening Congressional action, the Judicial Council for the United States Court of Appeals for the Sixth Circuit promulgated an "emergency rule" which was adopted by the United States District Court for the Middle District of Tennessee on December 24, 1982. *In re Administration of the Bankruptcy System,* Adm. Order No. 28(a) (M.D.Tenn. Dec. 24, 1982). This court subsequently declared the "emergency rule" unconstitutional and held that the district courts were without jurisdiction to entertain bankruptcy cases. *In re Conley,* 26 B.R. 885 (Bkrtcy.M.D.Tenn.1983). Thereafter, the United States District Court for the Middle District of Tennessee ruled that bankruptcy jurisdiction continued in the district courts, but that the "emergency rule" was invalid. *Walter E. Heller and Co. Southeast, Inc. v. Matlock Trailer Corp.,* 27 B.R. 318, 323 (D.C.M.D.Tenn.1983). Administrative Order No. 28 was withdrawn and by subsequent administrative orders, the Bankruptcy Judges for the Middle District of Tennessee were appointed standing masters to administer bankruptcy cases referred to them pursuant to Rule 53 of the Federal Rules of Civil Procedure. This case was referred to the standing master on April 7, 1983.

to make the required payments.[2] It is stipulated that the pension fund is owed interest-adjusted contributions of $49,817.40 and that the health and welfare fund is owed interest-adjusted contributions of $41,252.59.[3] Because Columbia failed to cure the delinquencies, the health and welfare fund ceased honoring claims filed by Columbia's employees on November 7, 1982.

On December 12, 1982, the plaintiffs filed this complaint seeking a judgment for the unpaid contributions, accumulated interest, interest penalties and liquidated damages, actual attorneys' fees and costs, and a permanent mandatory injunction requiring Columbia to remit future contributions on a timely basis. Jurisdiction was invoked pursuant to 29 U.S.C.S. § 185(a), 29 U.S.C.S. § 1132, 28 U.S.C.S. § 1331, and 28 U.S.C.S. § 1332 (Law.Co-op.1982).[4] A trial was held February 15, 1983.

Columbia's liability for the unpaid contributions is manifest. Columbia's failure to make timely contributions is a violation of the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C.S. § 1001, et seq. (Law.Co-op.1982). 29 U.S.C.S. § 1145 (Law.Co-op.1982) which provides that:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

The agreements to which Columbia is a party provide specific remedies at Art. XIV, § 4:

Non-payment by an Employer of any moneys due shall not relieve any other Employer from his obligation to make payment. In addition to other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on the monies due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer at the prime interest rate established by Chase Manhattan Bank (New York, N.Y.) for the fifteenth (15th) day of the month in which the interest is charged. *Any judgment against an Employer entered on and after September 26, 1980, for contributions owed to this Fund, shall include by mandate of the court the greater of (a) a doubling of the interest computed and charged in accordance with this section, or (b) liquidated damages based on the unpaid contributions only (exclusive of interest) as determined by the court in the amount of 20%, in accordance with the Multi-Employer Pension Plan Amendments Act of 1980, the Employee Retirement Income Security Act, 29 U.S.C. § 1132(g)(2)(c)(i) and (ii).* (emphasis in original).

The pension funds are consequently entitled to a judgment for unpaid post-petition arrearages and liquidated damages in the amounts stipulated.[5]

---

2. Columbia remitted to the plaintiffs $546 on November 24, 1982, $546 on December 8, 1982, and $546 on January 13, 1983. These amounts were credited to Columbia before stipulation of the arrearages.

3. These amounts are calculated as of January 18, 1983 and include interest payments as allowed by the trust agreements.

4. *See also* 28 U.S.C.A. § 1471 (West Supp. 1982). Claims against a Chapter 11 debtor for pension arrearage under ERISA are within the jurisdiction of the bankruptcy court. *See Cott*

*Corp. v. New England Teamsters and Trucking Industry Pension Fund,* 26 B.R. 332 (Bkrtcy.D. Conn.1982); *Braniff International Corp. v. Interfirst Bank (In re Braniff Airways, Inc.),* 24 B.R. 466 (Bkrtcy.N.D.Tex.1982).

5. It is stipulated that a doubling of the applicable interest rate would result in an interest penalty of $4,888.80 in favor of the pension fund and $3582.18 in favor of the welfare fund. Liquidated damages are stipulated to be $9,514.60 for the pension fund and $7,564.70 for the welfare fund. Because the trust agreements allow the court to award only the great-

The plaintiffs, however, are not entitled to an injunction mandating future payments. The United States Court of Appeals for the Sixth Circuit has established four factors that must be present before an injunction may be granted: (1) whether the plaintiff has shown a strong probability of success on the merits; (2) whether the plaintiff has demonstrated irreparable injury; (3) whether the issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing an injunction. *Mason County Medical Ass'n. v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977). A mandatory injunction is a particularly extraordinary remedy and is not regarded with judicial favor. *Plain Dealer Publishing Co. v. Typographical Union No. 53,* 520 F.2d 1220 (6th Cir.1975); *Detroit Newspaper Publishers Ass'n. v. Detroit Typographical Union No. 18,* 471 F.2d 872 (6th Cir.1972). The ERISA cases in which courts of this circuit have mandatorily enjoined employers to make payments all presented compelling facts not proven herein. *See, e.g., Laborers Fringe Benefit Funds v. Northwest Concrete and Construction, Inc.,* 640 F.2d 1350 (6th Cir. 1981); *Van Drivers Union Local No. 392 v. Neal Moving & Storage,* 551 F.Supp. 429 (N.D.Ohio 1982); *Central States, Southeast and Southwest Areas Pension and Health & Welfare Funds v. McNamara Motor Express, Inc.,* 503 F.Supp. 96 (W.D.Mich.1980). None of these cases involved a protected debtor-in-possession in bankruptcy. In *Laborers Fringe Benefit Funds,* the Sixth Circuit specifically found that the defendant had shown persistent contempt for the *judicial* process, that the defendant was unlikely to make future contributions, and that the prospects for collecting a judgment were slim because a previous judgment entered against the defendant had not been paid for five years. 640 F.2d at 1352. In *Van Drivers Union,* the court found that the defendant's delinquencies were endangering the fiscal solvency and continued stability of the pension fund, that the de- fendant was engaging in "continuing bad faith conduct," and that specific workers (who were co-plaintiffs to the action) would become personally liable for medical bills if contributions were not timely received. 551 F.Supp. at 432. The court in *McNamara Motor Express* made similar findings regarding irreparable harm to the plaintiffs if payments were not mandated. 503 F.Supp. at 99.

A mandatory injunction is inappropriate on the proof presented. The plaintiffs have not demonstrated irreparable injury or inadequacy of legal remedy. Plaintiffs have not shown that this defendant is engaged in any bad faith scheme to avoid enforcement of the contracts with plaintiffs. Defendant has indeed filed Chapter 11 and must include plaintiffs' pre- and postpetition claims. in its plan of reorganization, but such is the right Congress has afforded debtors and the plaintiffs have not demonstrated that their rights under the Bankruptcy Code are unavailable or inadequate. The plaintiffs have offered no proof that the actuarial soundness of the pension funds is threatened by Columbia's failure to make its contributions or that a judgment payable through a plan of reorganization is an inadequate remedy. Although the plaintiffs allege in their brief that contributions cannot be paid through a plan of reorganization, the plaintiffs proffered no evidence that Columbia would be unsuccessful in reorganizing or that delinquent contributions would remain unsatisfied. To the contrary, the proof at trial indicated that Columbia is generating revenues during this period of administration and paying other creditors. The parties disagree whether Columbia's receipts are adequate to make the weekly contributions. However, the proof asserted by plaintiffs did not establish that Columbia is financially incapable of resuming payments.

Regardless of Columbia's financial standing, the plaintiffs failed to carry their burden of proving they would suffer immediate and irreparable injury if their re-

er of these amounts, the plaintiffs' judgment may include an allowance of liquidated dam-    ages.

quested relief were not granted. If any immediate harm will occur, the injury will inure to Columbia's employees whose claims would presumably be dishonored by the plaintiffs. Yet it is significant that neither an employee nor the union has filed a complaint against Columbia or appeared in this proceeding in any manner since the commencement of this case in 1981. In fact plaintiffs' counsel expressed satisfaction with Columbia's management and insisted that no one could operate the company better than the present management group. Where substantial irreparable harm is not demonstrated, extraordinary relief compelling compliance with ERISA provisions is unwarranted. *See In re Food Fair, Inc.,* 14 B.R. 46 (Bkrtcy.S.D.N.Y.1981).

■ Despite the denial of injunctive relief, the court explicitly recognizes that Columbia is obligated to make the disputed payments and does not sanction the debtor's use of the collective bargaining agreements without making appropriate payments. Moreover, the debtor's failure to make current payments to plaintiffs forbodes ill for the likelihood of success in this Chapter 11. The court, however, is reluctant to interfere in the normal business operations of a debtor-in-possession except to prevent fraud.[6] The Bankruptcy Code favors the continued operation of a business by the debtor as debtor-in-possession and a presumption is accorded to the management decisions of the debtor-in-possession. *See In re Garland*

*Corp.,* 6 B.R. 456, 460 (Bkrtcy. 1st Cir.1980); *In re Bonded Mailings, Inc.,* 20 B.R. 781, 785 (Bkrtcy.E.D.N.Y.1982); *In re Harper Industries, Inc.,* 18 B.R. 773, 775 (Bkrtcy.S.D.Ohio 1982); *In re Searles Castle Enterprises, Inc.,* 12 B.R. 127, 128 (Bkrtcy.D.Me.1981); *Dardarian v. La Sherene, Inc.,* 3 B.R. 169, 174 (Bkrtcy.M.D.Ga.1980). When a creditor, or other party in interest, is dissatisfied with the manner in which a debtor-in-possession is operating, the Bankruptcy Code offers a substantial variety of remedies. If Columbia appears unwilling or unable to perform its contractual obligations, the court will entertain on an expedited basis motions for dismissal,[7] conversion, the appointment of a trustee,[8] or the creation of a time frame within which Columbia must accept or reject the collective bargaining agreements.[9] As no motion has been filed, the propriety of alternative remedies is not before the court and, therefore, is not addressed.

■ Contrary to the assertions of plaintiffs' counsel, plaintiffs' claims are not external to the normal processing of claims within this Chapter 11. Plaintiffs take the position that their claims against the debtor-in-possession are not claims in bankruptcy, but are somehow transformed by ERISA into a special status unaffected by the defendant's Chapter 11. Pension and health plan claims against a Chapter 11 debtor-in-possession, whether based on judgments or otherwise, are nonetheless

---

**6.** *See Flint Hills Foods, Inc. v. Von Der Ahe (In re Isis Foods, Inc.),* 19 B.R. 329 (Bkrtcy.W.D. Mo.1982) in which the bankruptcy court compelled payments on a postpetition contract to avoid the perpetration of a fraud on the court and on the creditor. No allegations of fraud appear in the plaintiffs' complaint.

**7.** 11 U.S.C.A. § 1112 (West 1979) provides the standards for dismissal of a Chapter 11 petition or the conversion of the case to one under Chapter 7.

**8.** 11 U.S.C.A. § 1104 (West 1979) provides for the appointment of a trustee for proper cause on the motion of a party in interest.

**9.** A party in interest may move the bankruptcy court to set a specific time in which a debtor-in-possession must assume or reject an executory contract pursuant to 11 U.S.C.A. § 365(d)

(West 1979). Apparently, rejection of the contracts with plaintiffs would subject Columbia to substantial withdrawal liability. *See* 29 U.S. C.S. § 1145 (Law.Co-op.1982). On the other hand, assumption of the contracts may be necessary to keep Columbia's labor force in place and would require Columbia to cure defaults and make certain assurances of future performance. *See* 11 U.S.C.A. § 365 (West 1979). Plaintiffs have not yet sought to accelerate the decision to accept or reject the contracts. The court will not at this time address the question whether the debtor's contract with its union or with plaintiffs can be rejected under § 365. *See National Labor Relations Board v. Bildisco and Bildisco,* 682 F.2d 72 (3rd Cir.1982) *cert. granted* —— U.S. ——, 103 S.Ct. 784, 74 L.Ed.2d 992 (1983).

subject to the provision of the Bankruptcy Code. ERISA does not impair the bankruptcy court's fundamental authority to administer a debtor's reorganization. Although 29 U.S.C.S. § 1144(a) (Law.Co-op. 1982) supercedes *state* statutes, 29 U.S.C.S. § 1144(d) (Law.Co-op.1982) explicitly states that:

Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supercede any law of the United States . . .

The Bankruptcy Code controls the allowance of claims including those arising under ERISA. *See Clotfelter v. CIBA–GIEGY Corp. (In re Threewitt),* 20 B.R. 434, 437 (Bkrtcy.D.Kan.1982); *Eisenberg v. Baviello,* 12 B.R. 412, 417 (Bkrtcy.E.D.N.Y.1981). 11 U.S.C.A. § 507(a)(4) (West 1979) provides a fourth level of priority for unsecured claims for contributions to employee benefit plans arising with 180 days prior to the petition. *See* Soble, *Bankruptcy Claims of Multi-employer Pension Plans,* 33 LAB.L.J. 56 (1982); Perkins, *Pension Claims in Bankruptcy,* 32 LAB. L.J. 343 (1981). Similarly, the extent, if any, to which the plaintiffs' claims are entitled to administrative priority is controlled by 11 U.S.C.A. § 503 (West 1979). If entitled to allowance as an expense of administration under § 503, plaintiffs' claims would receive a first priority under § 507(a)(1) and must be paid in full as of the effective date of any Chapter 11 plan as a prerequisite to confirmation under § 1129(a)(9).[10] All such questions of priority and allowance of claims are reserved for future hearing.

Accordingly, I recommend that the plaintiffs receive a judgment for the unpaid arrearages and for liquidated damages, but that the plaintiffs' request for a mandatory injunction be denied. The plaintiffs' judgment will be presented as a claim in the defendant's Chapter 11 case. The court's order should be without prejudice to the plaintiffs' right to seek other remedies un-

der the Bankruptcy Code upon appropriate motion or application.

Entered this 12th day of May, 1983.

---

**10.** Unless the holder of the claim agrees otherwise. *See* 11 U.S.C.A. § 1129(a)(9) (West 1979).