Matter of BAPTIST MEDICAL
CENTER OF NEW YORK,
INC., Debtor.

LOCAL 144 HOSPITAL WELFARE
FUND, Local 144 Hospital Pension
Fund, Local 144 Health Care Facilities
Training & Upgrading Fund, and Local
144 Hotel, Hospital, Nursing Home &
Allied Services Union, SEIU, AFL–CIO,
Plaintiff-Appellants,

v.

BAPTIST MEDICAL CENTER OF
NEW YORK, INC.,
Defendant-Appellee.

No. 84 Civ. 0558.

United States District Court,
E.D. New York.

Aug. 21, 1985.

Robert A. Cantore, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for plaintiff-appellants.

Mitchel H. Perkiel, Levin & Weintraub & Crames, New York City, for defendant-appellee.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Appellants Local 144 Hospital Welfare Fund, Local 144 Hospital Pension Fund, Local 144 Health Care Facilities Training & Upgrading Fund ("the Plans"), and Local 144 Hotel, Hospital and Nursing Home & Allied Services Union, SEIU, AFL–CIO ("Local 144") appeal from a final order and judgment issued on January 3, 1984 by the Honorable Cecelia H. Goetz, Bankruptcy Judge, insofar as that order stayed appellants from executing immediately upon a judgment obtained against debtor-appellee Baptist Medical Center of New York, Inc. ("Baptist") for unpaid contributions to multi-employer employee benefit plans for periods subsequent to Baptist's filing of a Chapter 11 petition. For the reasons set forth below, I affirm the order of the Bankruptcy Judge.

## BACKGROUND

The facts underlying this action are not in dispute and may be summarized briefly as follows. The three Appellant Plans are "multi-employer plan[s]" within the meaning of § 3(37) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(37). Specifically, the Pension Fund is an "employee pension benefit plan" under 29 U.S.C. § 1002(2), and the Welfare and Education Plans are "employee welfare benefit plans" under § 1002(1).

Baptist and Local 144 are parties to several collective bargaining agreements which require Baptist to make payments to each of the plans on behalf of its employees.

On March 3, 1981, Baptist filed a petition in the Bankruptcy Court for an arrangement pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101—1174, and has since operated as a debtor-in-possession. Since filing its bankruptcy petition, Baptist has made only a few payments to the Plans. Despite several efforts of the parties during the course of the bankruptcy proceedings, Baptist was unable to render a significant amount of contributions to the Plans. Thus, when Judge Goetz rendered partial summary judgment in favor of appellants on January 3, 1984, she found that appellants were entitled a judgment in the amount of $997,371.70 plus interest, liquidated damages (i.e., double interest), costs and attorneys' fees.[1] However, Judge Goetz stayed execution of that judgment pursuant to 11 U.S.C. § 362, and it is from that aspect of the judgment which appellants seek relief. It is undisputed that the portion of Baptist's debt to the Plans which accrued after the filing of the Chapter 11 petition, i.e., the amount upon which Appellants here seek to execute, is an administrative expense as defined in 11 U.S.C. § 503.[2]

In her opinion of August 23, 1983 ("the Opinion"), which sets forth the basis for the judgment entered January 3, 1984, Judge Goetz reasoned:

Bankruptcy has two major purposes: "achieving equality among creditors and giving the debtor a fresh start". *In re*

---

1. It is also undisputed that since the entry of judgment by Judge Goetz, Baptist accrued substantial additional debt to the Plans, resulting in the termination of all benefits due to Baptist's employees under the Plans effective as of February 1, 1984. Plaintiff-Appellants' Memorandum of Law at 8 n. 3.

2. Section 503 of Title 11 of the United States Code provides in relevant part:

    § 503. Allowance of administrative expenses.

    (a) An entity may file a request for payment of an administrative expense.

    (b) After notice and a hearing, there shall be allowed, administrative expenses, other than those allowed under Section 502(f) of this title, including—

    (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

    Pursuant to 11 U.S.C. § 507(a)(1), administrative expenses allowed under § 503(b) are among the claims which receive first priority with respect to the distribution of the estate.

*B.D.I. International Discount Corp.* F.2d n. 8 (2d Cir.1983) [sic]. In a Chapter 11 proceeding these two goals are to be achieved through the plan or reorganization. Permitting the plaintiffs to levy the defendant would short-circuit the reorganization proceeding and would result in inequality among similarly situated creditors, contrary to the legislative intention embodied in the bankruptcy code. As the defendants point out, for the Court to declare the monies owing the plaintiffs to be due and couple that with a direction for their payment, the result would be to "create a windfall to one particular group of Baptist's creditors to the detriment of all other creditors, including other administrative claimants, not only with respect to the inequitable sequential nature of such payment, but more importantly with respect to the fatal ramification thereof upon Baptist's ability to continue to exist as a health care facility." … In short, a direction to pay the full amount owed plaintiffs for post-petition contributions would probably be fatal to the ability of Baptist to continue to function as a debtor-in-possession, and, if, as seems likely, there would not be enough money left to pay Baptist's other administrative expenses, the Plans would get preferential treatment. Baptist points out that preferential treatment for the plaintiffs would be incompatible with the Code which requires that administration expenses receive equal treatment, *i.e.* it is unfair to pay some administrative creditors in full, and others only in part. Accordingly, Baptist would limit plaintiffs' relief to the filing of a proof of claim for expenses of administration to be satisfied upon confirmation of a plan of reorganization of Baptist.

Plaintiffs indirectly concede that to grant them the relief they seek would destroy the equality of treatment the Code is supposed to ensure. In plaintiff's reply memorandum they contend "that since this Court may not deny plaintiffs their relief, the only way it may seek to preserve any remaining equality in treat-ment of post-filing creditors is to, *sua sponte,* either dismiss the petition or adjudicate Baptist as a bankrupt".… Thus, they recognize that the relief they request is incompatible with the continuation of this proceeding and accomplishment of the goal of reorganization. That being the case, the Court deems that it has the discretion under ERISA, § 502(g) to refuse to authorize a levy on the assets of this debtor for the benefit of this particular creditor. In enacting the Multi-Employer Pension Plan Amendments Act Congress could not have intended to amend the law governing bankruptcy. The Bankruptcy Code and ERISA must be interpreted together. See Soble, Richard S., Bankruptcy Claims of Multi-employer Pension Plans, 33 Labor Law Journal 57 (1982).

\*　　\*　　\*　　\*　　\*　　\*

In this case insistence on immediate cash payment of the unpaid post-petition contributions together with interest, costs, liquidated damages and attorney's fees might well trigger the immediate discontinuance of operations by the debtor. The beneficiaries of the plaintiff Plans may well prefer continued employment and the wages such employment generates to having the Plans temporarily funded only for funding and wages both to cease because Baptist is unable to carry the burden of both.

There is no inconsistency between denying plaintiffs execution on their judgment and awarding various professional persons interim fees as the Court is doing today. The latter award is predicated upon the statement made in court that the payment of the fees will be scheduled so as not to jeopardize the ability of the debtor to continue in operation.

Opinion at 8–10 (references omitted).

In challenging the bankruptcy judge's decision, appellants set forth two basic arguments. First, they urge that § 362 affords a bankruptcy judge no discretion to stay execution of post-petition administrative claims, *i.e.,* the unpaid contributions

owed by Baptist to the Plans which were incurred after Baptist filed its Chapter 11 petition. Appellants claim that both the Code and ERISA prohibit the issuance of such a stay. Second, appellants contend that even if Judge Goetz had the authority to issue this type of stay, she abused her discretion in so doing.

DISCUSSION

A. *Power to Stay Execution of Payment of Administrative Expenses*

Section 362 of Title 11 of the United States Code provides in relevant part:

(a) Except as provided in subsection (b) of this section, a petition under 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce against property of the estate....

It is undisputed that the post-petition funds owed by Baptist to Appellants constitute "property of the estate." In addition, § 362(d) permits the bankruptcy court to order relief from a stay under certain circumstances.[3]

Appellants have advanced two bases for their contention that the Bankruptcy Judge lacked the authority to stay the execution of their judgment against Baptist. As one reason they urge that § 362 does not permit a stay of the payment of administrative expenses such as those in issue here. As support for this argument, appellants rely on *In re REA Express, Inc.*, 442 F.Supp. 71 (S.D.N.Y.1977), *aff'd mem. sub nom., St. Paul Fire & Marine Ins. Co. v. REA Express, Inc.*, 591 F.2d 1332 (2d Cir.1978), and *In re Axton*, 641 F.2d 1262 (9th Cir.1981). Although referring to the issue at bar in dicta, neither of these cases dealt squarely with the circumstances presented here.

In *REA Express*, the bankruptcy and district courts were concerned with whether, under the rules governing Chapter 11 proceedings under the Bankruptcy Act then in effect, "workmen's compensation benefits on behalf of the debtor in possession to employees injured *before* the commencement of the [Chapter 11] arrangement proceeding" were to be considered "costs and administrative expenses" for purposes of payment priority. 442 F.Supp. at 72 (emphasis in original). The bankruptcy court held that such claims were entitled to first priority as costs and expenses of administration, but the district court reversed, finding that equitable considerations could not be permitted to "vary the strict priorities" set forth in the Act. *Id.* at 74. The district court, on passing, *distinguished* the claims there in issue "from costs and expenses of administration, which must be paid during the [Chapter 11] proceeding on a current basis." *Id.*

In the *Axton* case, the Ninth Circuit relied on the above language for the proposition that "[c]osts and expenses of administration must be paid on a current basis and *cannot be deferred until there is a distribution to creditors.*" 641 F.2d at 1273 (emphasis added) (citation omitted). Whether a stay of execution on a claim for administrative expenses may be issued, however, was not at issue in that case. *See id.* at 1266. Rather, the *Axton* court was confronted with questions concerning the effects of California law and bankruptcy law on the covenants set forth in a commercial lease between the landlord and the debtor-in-possession, whether the landlord had consented to the summary juris-

---

**3.** Section 362(d) of Title 11 of the United States Code provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

diction of the bankruptcy court (with respect to the debtor's cross-claim's against it) by filing a complaint with that court seeking forfeiture of a lease and monetary damages, and the nature of the debtor's cross-claim. The court's characterization of money owed under the lease as an administrative claim was therefore not necessary to the court's decision.

Notwithstanding Appellants' citations of authority to the contrary, Baptist has set forth support for its contention that administrative claims need not be paid immediately upon request. In *In re Standard Furniture Co.*, 3 B.R. 527 (Bankr.S.D.Cal. 1980), the court considered the request of a claimant for immediate payment of certain administrative expenses. The Court noted that the Bankruptcy Code "merely authorizes a claimant to request payment.... It does not address the question of *when* a claim for administrative expense is to be paid[.]" *Id.* at 532 (emphasis in original). The court relied upon the "wide discretion in allowing the payment of administrative expenses, such as attorney's fees, on an interim basis" afforded to the courts under the old Bankruptcy Act, *id.*, yet recognized "that an interim allowance should not be authorized for any Section 507(a)(1) [first priority] claim in an amount which exceeds the anticipated pro rata payout to be received during the entire administration of the case." *Id.* (citations omitted). Finding that the costs of administration in the *Standard Furniture* case *would* be paid in full, the court allowed immediate payment of the creditor's administrative claim.

Relying on *Standard Furniture*, the court in *In re Verco Industries*, 20 B.R. 664 (Bankr. 9th Cir.1982), reiterated the principle that "[t]he determination of when an administrative expense is to be paid is within the discretion of the trial court." *Id.* at 665 (citations omitted). In that case creditor Spartan Plastics was found entitled to payment of administrative expense of rent from the debtor. The debtor's Chapter 11 estate, however, had also been found entitled to a judgment against Spartan for an amount greater than the administrative expenses due Spartan from the debtor. The Bankruptcy Appellate Panel deemed the bankruptcy court's stay of the payment due Spartan appropriate in order to "preserve[ ] the status quo" of the parties pending Spartan's appeal from the judgment entered against it.

■ While the circumstances underlying the decisions in *Standard Furniture* and *Verco Industries* are distinguishable from those presented in the instant case, they do constitute judicial precedent for the proposition that administrative claims need not be paid immediately. In both cases, the courts were concerned with maintaining the status quo among the parties involved in the bankruptcy proceedings. This goal is fully consistent with the legislative history of the Bankruptcy Reform Act of 1978:

> The automatic stay ... provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.
>
> Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 49, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5835 (discussing §§ 361 and 362); H.Rep. No. 95–595, 95th Cong., 2d Sess. 340, *reprinted in id.* at 6297 (discussing § 362). In contrast, the legislative history of § 503 does not state *when* an administrative expense is to be paid. S.Rep. at 66–7, *reprinted in id.* at 5852; H.Rep. at 355, *reprinted in id.* at 6310–11 (both noting that the Rules of Bankruptcy Procedure would specify the time, form and method of *filing* a request for payment of administrative expenses). Thus, it is apparent that the Bankruptcy Judge possessed the *authority* to stay payment of Appellants' administrative claims based on legislative history and judicial precedent. *See also 3 Collier on Bankruptcy* ¶ 503.01 at 503–6 n. 3 (15th Ed.1979 & Supp.1985)

(citing additional cases wherein a stay of payment of administrative claims was appropriate).

As additional authority for their argument that they are entitled to immediate execution on their post-petition judgment against Baptist, Appellants rely on the language of ERISA. In 1980, Congress enacted the Multi-Employer Pension Plan Amendments Act of 1980 ("MPPAA") in order to provide additional protection from delinquency to funds such as those administered by Appellants.[4] Section 306 of the MPPAA added to ERISA the provisions which are here in issue—Sections 515, (29 U.S.C. § 1145), and 502(g)(2) (29 U.S.C. § 1132(g)(2)) of ERISA. Those portions of the statute provide as follows:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court *shall award* the plan—
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>   (i) interest on the unpaid contributions, or
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

---

**4.** A more detailed discussion of the legislative history of the relevant portions of ERISA can be

> (E) such other legal or equitable relief as the court deems appropriate.
> For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1954.

29 U.S.C. § 1132(g)(2). (Emphasis added). It is undisputed that Baptist violated 29 U.S.C. § 1145. What Appellants urge, however, is that the "shall award" language highlighted above *mandates* that the bankruptcy court (or any court) award *immediate* judgment on any amounts due under § 1132(g)(2). Appellants contend that this language requires a court not only to decree entitlement to a judgment, but to order that the plans actually *receive* immediate payment thereof. Appellants' brief at 15–16. This position is, however, without support.

■ First, Appellants' have submitted no *specific* authority for the proposition that the "shall award" language of § 1132(g)(2) must be read as "shall immediately award." Reading that language in context, it is more likely that the plain language of the statute is intended to be read as Baptist suggests:

> Clearly, the above-quoted provisions do *not* purport to govern the means by which a judgment may be enforced, but merely delineate the various forms of relief a court should ordinarily incorporate into any judgment it may issue. Nowhere in these provisions is it stated that a court is without discretion to view the totality of circumstances in determining how the judgment is to be enforced.

Baptist's Memorandum at 5 (emphasis in original). This interpretation of § 1132(g)(2) was apparently relied upon by the Bankruptcy Judge, who included in the judgment entered on behalf of Appellants the various types of relief specified in § 1132(g)(2), but stayed execution of the judgment.

found in the parties' memoranda.

The view espoused by Baptist and followed by the Bankruptcy Judge is entirely in accordance with the relevant case law. Although in some respects dissimilar from the instant case, the case of *In re Columbia Motor Express, Inc.*, 33 B.R. 389 (M.D. Tenn.1983) supports this conclusion. The debtor-in-possession in that case filed a Chapter 11 petition on July 7, 1981 and thereafter failed to make payments to the Central States Southeast and Southwest Areas Health and Welfare and Pension Funds ("the Funds"). The Funds ceased to honor claims by Columbia's employees on November 7, 1982. Like the Appellants here, the Funds brought an action to recover post-petition pension fund contribution arrearages. The relief sought by the Funds, however, was a judgment and the issuance of a mandatory injunction requiring the debtor to make future payments. Approving the opinion of the Special Master, the district court determined that the funds *were* entitled to a judgment against Columbia, but that they were *not* entitled to an injunction compelling future payments. In reviewing ERISA cases wherein the Sixth Circuit mandatorily enjoined employers to make future payments to benefits funds, the *Columbia Motor Express* court succinctly noted the significant distinction between those cases and the one before it. "None of these cases involved a protected debtor-in-possession in bankruptcy." Id. at 392. The court further noted:

Defendant has indeed filed Chapter 11 and must include plaintiffs' pre—and postpetition claims in its plan of reorganization, but such is the right Congress has afforded debtors and the plaintiffs have not demonstrated that their rights under the Bankruptcy Code are unavailable or inadequate. The plaintiffs have offered no proof that the actuarial soundness of the pension funds is threatened by Columbia's failure to make its contributions or that a judgment payable through a plan of reorganization is an inadequate remedy.

Id.

The court in *Columbia Motor Express* made further relevant observations:

Despite the denial of injunctive relief, the court explicitly recognizes that Columbia is obligated to make the disputed payments and does not sanction the debtor's use of the collective bargaining agreements without making appropriate payments. Moreover, the debtor's failure to make current payments to plaintiffs forbodes ill for the likelihood of success in this Chapter 11. The court, however, is reluctant to interfere in the normal business operations of a debtor-in-possession except to prevent fraud. The Bankruptcy Code favors the continued operations of a business by the debtor as debtor-in-possession and a presumption is accorded to the management decisions of the debtor-in-possession. . . .

*Id.* at 393 (footnote and citations omitted). Finally, the court stated:

Plaintiffs take the position that their claims against the debtor-in-possession are not claims in bankruptcy, but are somehow transformed by ERISA into a special status unaffected by the defendant's Chapter 11. Pension and health plan claims against a Chapter 11 debtor-in-possession, whether based on judgments or otherwise, are nonetheless subject to the provision [sic] of the Bankruptcy Code. ERISA does not impair the bankruptcy court's fundamental authority to administer a debtor's reorganization. Although [ERISA] . . . supersedes state statutes, 29 U.S.C.S. § 1144(d) . . . explicitly states that:

Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supercede any law of the United States . . .

The Bankruptcy Code controls the allowance of claims including those arising under ERISA.

*Id.* at 393–94 (citations omitted). The rationale of *Columbia Motor Express*, while not developed in connection with an application for relief from an automatic stay, fully supports Baptist's contention that even the "shall award" language of ERISA should not be read to supersede the provisions of

**424**

the Bankruptcy Code.[5] As I have found nothing in either the Bankruptcy Code or in ERISA which persuades me that the Bankruptcy Judge lacked the power to stay execution of Appellants' judgment against Baptist, it is now appropriate to consider whether the judge abused her discretion in issuing such a stay.

### B. *Abuse of Discretion*

■ It is well settled, as stated by Judge Goetz, that the purposes of bankruptcy proceedings are to achieve equality among

---

5. In their Reply Memorandum, Appellants urged that the decision in *Columbia Motor Express* should not be given great weight because that decision was being reconsidered by the district court in Tennessee. Subsequent developments in that case do not detract from the result reached herein.

The *Columbia Motor Express* decision discussed in the text of this opinion bore adversary number 382–0850 and was presented to a Special Master and then to District Judge Nixon, who rendered his decision on August 29, 1983. The same creditor apparently also initially brought in the district court a civil action, No. 1–83–0036, against the debtor-in-possession. In that action, a different district judge, Judge Wiseman, issued an Order and Final Judgment on August 2, 1983 *granting* the Funds' request for a permanent injunction requiring the payment of contributions. Thus, the Funds moved in action 382–0850 for reconsideration and reargument, urging that the August 2 civil judgment in their favor should have bound Judge Nixon based on *res judicata.*

After permitting reargument of his August 29, 1983 decision, Judge Nixon amended that opinion in two respects, by Order dated August 24, 1984. First, he denied the Funds' request for injunctive relief as moot, it appearing to the parties and the Court that the debtor had voluntarily recommenced payments to the Funds. Second—and most significant with respect to the instant case, Judge Nixon ordered:

The holding of the Bankruptcy Court that the plaintiffs' demand for pension fund and health and welfare fund contributions will be presented as a claim in the defendant's Chapter 11 case is approved. In the judgment of this Court the decision of the Court in the related Case No. 1–83–0036 may be in degregation [derogation?] of the automatic stay of 11 U.S.C. § 362. Thus, *this Court does not deem the decision in No. 1–83–0036 controlling.*

(emphasis added). In all other respects, Judge Nixon affirmed his decision of August 29, 1983. Thus, the reargument and reconsideration of that decision have no ultimate effect upon the law applicable in the instant case.

Additional case law support for the conclusion that § 362 of the Bankruptcy Code permits a stay of execution of a judgment for administrative expenses is found in *In re Nashville White Trucks,* 22 B.R. 578 (Bankr.M.D.Tenn.1982), *aff'd,* 731 F.2d 376 (6th Cir.1984). In that case, the Commissioner of Internal Revenue for the State of Tennessee sought directly to assess and collect post-petition taxes incurred by the debtor-in-possession, Nashville White Trucks, Inc., urging that § 362 could not be applied to a claim made by the State. The trustee subsequently appointed on behalf of the debtor refused to pay those amounts due to the Commissioner.

Denying the Commissioner's request for relief declaring that the automatic stay provision of § 362 was unconstitutional, or, if constitutional, could not be applied to stay Tennessee from assessing and collecting the taxes due, the *Nashville White Trucks* court reasoned:

The Commissioner's interest in prompt payment of state sales and use taxes does not outweigh the vital federal interest in insuring the orderly and efficient administration of the bankruptcy estate through the utilization of the automatic stay. In *Holtkamp v. Littlefield,* 669 F.2d 505, 508 (7th Cir.1982), the Seventh Circuit Court of Appeals aptly described the necessity for an automatic stay:

"The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, H.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in (1978) U.S.Code Cong & Ad.News 6296–97, thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.' *In re Frigitemp Corp.,* 8 B.R. 284, 289 (D.C.S.D.N.Y.1981) *citing Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 55 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977)."

22 B.R. at 585. Affirming the decision of the bankruptcy Judge, the Sixth Circuit noted that it would have been appropriate for the Commissioner to seek relief from the stay (as opposed to attempting to levy directly against the property held by the trustee from the bankruptcy court; to do otherwise would "not only tend to impinge upon similar tax claims of the United States, but would also create chaos in the administration of the bankrupt's estate—the very problems which the automatic stay provisions of Section 362 were designed to alleviate." 731 F.2d at 378. The *Nashville* court did not address the time when the Commissioner's administrative claims were to be paid, but implicitly found that § 362 prohibited the Commissioner from levying against the debtor's estate for *post-petition* expenses in the absence of relief from such a stay.

creditors and to give the debtor a fresh start. *In re B.D. International Discount Corp.*, 701 F.2d 1071 (2d Cir.), *cert. denied sub. nom.*, *B.D. International Discount Corp. v. Chase Manhattan Bank, N.A.*, —— U.S. ——, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983). The automatic stay of § 362 is a means which is utilized to reach these goals in an orderly fashion. The Code does, however, provide relief from the automatic stay in accordance with the requirements of 11 U.S.C. § 362(d), *supra* note 3. Relying only upon the language of that portion of the statute, Appellants urge that "the bankruptcy court's decision serves only to promote *inequality* among creditors" because only Appellants, Baptist's employees, the Internal Revenue Service and certain professionals were unpaid while Baptist did keep current the payments due to other administrative creditors. Appellants' brief at 24.[6] This argument fails to meet the specific requirements set forth in § 362(d). As Baptist correctly points out, "cause" is sufficient to vacate a stay under § 362(d)(1) only when viewed in the context of the totality of the circumstances. *See, e.g., In re General Oil Distributors Inc.*, 33 B.R. 717, 719 (Bankr.E.D.N.Y.1983).

In the instant case, the Bankruptcy Judge did consider the entire set of circumstances before her, including the effect that an immediate execution upon Appellants' judgment would have upon Baptist's ability to continue to function as a health care facility. In similar circumstances, the bankruptcy court in *In re Jewish Hospital*, 13 B.R. 417 (Bankr.S.D.N.Y.1981) (Galgay, J.), permitted employee benefit plans to receive payments for administrative expenses out of the funds available to the debtor-in-possession only *"after* payment of essential, necessary expenses of operation." Id. at 420 (emphasis added). In

rendering that decision, Judge Galgay reviewed in detail the equitable nature of the power of the bankruptcy court, noting that "[t]he health and safety of the general public is [sic] indisputably a paramount public interest." *Id.* at 419. The court further stated:

[K]illing the patient to cure the disease is not the solution. Further and more importantly, it is clear that the applicant is not rendering services essential to the debtor's existence. In contrast, the hospital is providing services that are essential and which cannot be replaced. A balancing of the equities in this case mandates that full payment to District 1199 be deferred at least for the present.

*Id.* at 420. This reasoning comports with the logic recently espoused by the Second Circuit in *In re: Baldwin-United Corp. Litigation,* 765 F.2d 343 (2d Cir.1985). There, the court stated:

Even if it should ultimately be determined that the automatic stay under section 362 does not apply to Paine Webber's third-party complaint [relating to a post petition claim based on pre-petition facts], the Bankruptcy Court has authority under Section 105 *broader than the automatic stay provisions* of section 362 and *may use its discretion to assure the orderly conduct of reorganization proceedings.*

*Id.* at 348 (emphasis added).[7] *See also Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966) ("there is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction").

The concern with a debtor-in-possession's ability to continue operation and the maintenance of the status quo among the participants in the bankruptcy proceeding was

**6.** At oral argument of this appeal, an attorney from the Office of the United States Attorney brought to the attention of this Court the allegation of the Internal Revenue Service that it was owed a greater amount in administrative expenses than were Appellants. Although I granted the government leave to submit a memorandum with respect to this appeal, the government did not do so.

**7.** Section 105 of Title 11 of the United States Code, referred to in *Baldwin-United,* provides in pertinent part: "(a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

relevant to the decisions rendered in the *Columbia Motor Express, Verco Industries* and *Standard Furniture* cases discussed *supra*. The *Columbia Motor Express* court, in fact, noted that the creditor Funds could seek alternate remedies before the bankruptcy court. 33 B.R. at 393 (indicating creditors' ability to seek dismissal, conversion, appointment of a trustee or creation of a time frame during which the debtor must accept or reject its collective bargaining agreements). The Appellants here are well aware of their ability to seek similar relief should Baptist's reorganization ultimately fail. Appellants' Reply Memorandum at 20–21 (noting bankruptcy court's ability to dismiss a Chapter 11 petition or convert the case into a Chapter 7 proceeding.[8]

Viewing the circumstances of this appeal in totality, I find that the Bankruptcy Judge properly exercised her discretion in issuing the stay in controversy. Recognizing that execution upon their judgment could likely cause Baptist to cease operations, Appellants nevertheless state: "Plaintiffs must be granted their requested relief even if it might trigger the liquidation of the debtor." Appellants' Reply Memorandum at 20. In view of the policies underlying the Bankruptcy Code and in particular § 362, the Bankruptcy Judge appropriately stayed execution in order to preserve both the orderliness and equitable goals of the bankruptcy proceeding, as well as to preserve the ability of Baptist to continue to operate as a health care facility. If one of the purposes of bankruptcy is to give the debtor a new start, it would be impossible for this debtor to do so were it caused to cease operations due to immediate payment of Appellant's administrative expenses.

*Conclusion*

For the reasons set forth above, the portion of the decision of the Honorable Cecelia H. Goetz dated January 3, 1984 herein appealed from is in all respects affirmed.

---

8. Appellants orally moved the Bankruptcy court for conversion at the hearing conducted on June 14, 1983. Tr. 17. Although the court directed Appellants that any such motion be submitted in written form, Tr. 18, Appellants did not file such a motion. Appellants' Reply Memorandum at 21 n. 21.